JOHN F. YOUNT, Appellant, v. M. J. CARNEY *et al.*

**1 Breach of Marshal's Bond, What is.**  An illegal arrest is a breach of a bond to "faithfully  *  *  and without oppression discharge all duties  *  *  required by law."

**3 Illegal Arrest: Evidence: Directing Verdict.**  Where a marshal, without a warrant, arrests a person for horse stealing, on the direction of another, believing that the horse which the person arrested has is not stolen, and again arrests him on direction, believing him innocent, it is error to direct a verdict in the marshal's favor.

**Same: Damages.**  The question of mental suffering and injury to feelings should, under such circumstances, go to the jury, though neither fraud nor malice appear.

**Practice in Supreme Court:** MAKING NOTES AND TRANSCRIPT PART OF RECORD.  Where a bill of exception directs the clerk to incorporate the shorthand notes and transcript taken at the trial "of such cause," the same are sufficiently identified and become part of the record when filed.

*Appeal from Mahaska District Court.*—HON. A. R. DEWEY, Judge.

WEDNESDAY, OCTOBER 3, 1894.

THIS action is against M. J. Carney as principal, and G. B. McGall, Dennis Creeden, C. W. Jordan, and Michael Mitchel, as sureties on the official bond of said Carney as marshal of the city of Oskaloosa.  Said bond is conditioned that said M. J. Carney will "faithfully and impartially, without fear, favor, fraud, or oppression, discharge all the duties now or hereafter required of his office by law."  Plaintiff alleges, as a breach of said condition, that on the

fourteenth day of December, 1890, and the day follow-
ing, "said M. J. Carney, as city marshal, under color
and by virtue of his said office and his official position,
did falsely, wantonly, and wrongfully, and without
reasonable or probable cause, and without warrant or
any process of any court, arrest plaintiff, and held him
and detained him contrary to law, * * * and by said
arrest did cause said plaintiff great bodily and mental
pain and suffering and anguish of mind;" wherefore
plaintiff asked to recover one thousand dollars damages.
Defendants answered, admitting that defendant Car-
ney was marshal, and that they executed said bond as
alleged, and denying every other allegation contained
in the petition. At the conclusion of the evidence in-
troduced on the trial, the defendants filed a motion for
a verdict, which was sustained and judgment entered
accordingly. Plaintiff appeals.—*Reversed.*

*Bolton & McCoy* and *D. C. Waggoner* for appellant.

*W. G. Jones* and *John F. & W. R. Lacey* for
appellees.

GIVEN, J.—I. Appellees contend that "the evi-
dence has not been made of record, and the notes and
transcript have not been identified and made of record,
by bill of exceptions." Appellant's abstract shows
that the cause came on for trial March 19, 1892, and
that the evidence was ordered reported by J. H. P.
Robinson, official reporter, and was reported by him;
that on the fourth day of April, 1892, by proper bills
of exceptions, plaintiff preserved the evidence as set
out; and that on April 12 the court overruled plaintiff's
motion for a new trial. Appellee's abstract shows the
bill of exceptions, as follows: "A jury was called, and
the trial proceeded with. On the trial the evidence
was taken down by J. H. P. Robinson, official short-
hand reporter of said district. (Here the clerk will

copy the shorthand notes and the transcript thereof of the evidence so taken upon the trial of said cause.)" Appellees contend that the evidence is not identified in this bill of exceptions, as required by section 2834 of the Code. Appellant's amended abstract shows that the shorthand notes of all the evidence taken by Mr. Robinson were duly filed March 22, 1893, and that the translation thereof, duly verified, was filed February 7, 1893. The bill of exceptions directs the clerk to copy "the shorthand notes and the transcript thereof of the evidence so taken upon the trial of said cause." It will be observed that the shorthand notes were on file prior to the giving of this bill of exceptions; therefore we hold that the reference in the bill was unmistakably thereto. See *Hunter v. R'y Co.*, 75 Iowa, 495, 41 N. W. Rep. 305; *Glenn v. Gleason*, 61 Iowa, 28, 15 N. W. Rep. 659; *McCarthy v. Watrous*, 69 Iowa, 260, 28 N. W. Rep. 586; *Gardner v. R'y Co.*, 68 Iowa, 588, 27 N. W. Rep. 768; *Wilson v. First Presbyterian Church*, 60 Iowa, 112, 14 N. W. Rep. 138.

II. The single contention is whether the court erred in directing a verdict for the defendants. There is no question but that the defendant Carney, in his capacity as city marshal, did, on the evening of the fourteenth, and again on the evening of the fifteenth of December, 1890, in the city of Oskaloosa, without a warrant, and without the plaintiff having committed, or attempted to commit, any public offense in his presence, arrest and detain the plaintiff in custody for about two hours at each arrest. If these arrests were authorized and lawful, or if the plaintiff suffered no actual damage thereby, the action of the court is warranted; otherwise it is not. Section 4200 of the Code provides that "a peace officer without a warrant may make an arrest  *  *  *  (2) where a public offense has in fact been committed, and he has reasonable ground

for believing that the person to be arrested has committed it.''

Appellant contends that, under the evidence, the queston whether defendant Carney had reasonable ground for believing that the plaintiff had committed a public offense should have been submitted to the jury; while appellees contend that the evidence shows without conflict that he had reasonable ground for so believing. In view of the conclusion we reach, it is not proper that we should discuss the evidence at length. We will only notice in a general way the authority under which the defendant Carney made these arrests. He states as his authority for making the first arrest ''that Eli Hawkins had a telephone from Albia or Eddyville, that he had read to him, stating that a horse was stolen at Albia, and that two men had passed through Eddyville that afternoon with two horses and buggies or buckboards, and that one of the horses resembled the horse that was stolen.'' Mr. Hawkins testified that the parties sending the message requested him to watch the men, or get some one to hold them until they got there, and that he so told Deputy Marshal Bush, and that Bush went and got Carney. Plaintiff and one Jackson arrived in Oskaloosa on the evening of the fourteenth from Eddyville, plaintiff driving a horse to a cart, and Jackson driving a mare to a buckboard. The first arrest was made immediately after their arrival, and both Yount and Jackson detained in custody until the parties arrived from Eddyville, and declared that neither of the horses was the one that had been stolen. It is not stated by any of the witnesses that the request to Hawkins to detain the men was communicated to Carney, but such was probably the fact. Carney examined the mare before making the first arrest, and says: ''I thought she was not the animal that was wanted. I did not think they were the thieves.'' Other circum-

stances appear in the evidence proper to be considered
in determining whether defendant Carney had reason-
able grounds for believing that the plaintiff had com-
mitted a public offense, but we have stated sufficient
to show that the question whether he had reasonable
ground for so believing when he made the first
arrest should have been submitted to the jury.

The authority for making the second arrest was
this: C. M. Forest, sheriff of Monroe county, who, it
is claimed, held a warrant for the arrest of men for
horse stealing, having heard of the arrest and release
of the plaintiff and Jackson on the fourteenth, com-
municated with defendant Carney by telephone on the
fifteenth. Forest states their communication as fol-
lows: "I called for the city marshal, and inquired for
these parties, if he had them yet, and he said, 'No.' I
asked him if he knew them, and he said he did not,
but that they claimed that they were fruit-tree agents.
I asked him what he knew about their declarations,—
whether he thought them to be true or not. I think I
said to him I thought he could search them and satisfy
himself. He wanted to know if we could not give him
some better description of them than we had. He
said he had turned his parties loose, and that they had
gone into the country, but he was looking for them
back. He said, if they came back, he would satisfy
himself. He did so and reported to me." Carney
states it as follows: "Monday evening, the sheriff
at Albia called me up at the telephone, and asked me
why I didn't arrest those fellow and search
them. I told him I did not think they were
the men that were wanted. I said these men
have been here since Sunday, and, if they were
horse thieves, I don't think they would remain quite
so long. He said, 'You go on and arrest them
and search them.'" He further states that, when he
arrested the men the last time, he was entirely sat-

isfied in his own mind that they were not the men who had stolen the horse. It will be observed that Carney testifies that Forest said, "You go on and arrest them and search them," while Forest does not state that he gave such an order; thus presenting a material conflict in the evidence. The question whether defendant Carney had reasonable ground for believing that the plaintiff had committed a public offense when he made the second arrest should have been submitted to the jury.

III. Appellees contend that there was no evidence of fraud or malice in making the arrests, nor of any actual damage; therefore the court properly directed a verdict for the defendant. There is no evidence that Mr. Carney used other or harsher means in arresting and detaining the plaintiff than were necessary to accomplish those ends with one offering no resistance. There is no evidence of oppression, except as the arrests may have been made without authority. The arrests and detentions of the plaintiff were in the presence of a number of persons, and in public places of the town. At the last arrest the plaintiff's person was searched, and his private papers examined. Mental suffering and injury to feelings are proper to be considered in assessing damages in such cases. *Parkhurst v. Masteller*, 57 Iowa, 474, 10 N. W. Rep. 864. We think, under the evidence, the question of damages should have been submitted to the jury.

IV. It is suggested in the argument for appellees that no breach of the conditions of the bond sued upon was shown, and that, therefore, the court properly directed a verdict for defendants. This contention is fully answered in *Clancy v. Kenworthy*, 74 Iowa, 743, 35 N. W. Rep. 427, wherein the bond was conditioned the same as this. It was therein insisted that, as the constable had no lawful authority to arrest the plaintiff, his act was not in the line of his

duty, and not a breach of the conditions of the bond.
It was held that the arrest, being in the line of his offi-
cial duty, though illegal, because in excess of the duty,
was a breach of the conditions of his bond.   See, also,
*Strunk v. Ocheltree,* 11 Iowa, 158; *Charles v. Haskins,*
Id. 330.

The judgment of the district court is reversed, and
the case remanded for a retrial.   REVERSED.