CASE 99—ACTION BY B. W. TUCKER AND OTHERS AGAINST WAYNE HOGAN, TO RESCIND A CONTRACT FOR THE SALE OF A FLOUR MILL. —DEC. 2.

## Hogan, &c. v. Tucker, &c.

APPEAL FROM TAYLOR CIRCUIT COURT.

JUDGMENT FOR PLAINTIFFS AND DEFENDANTS APPEAL.   REVERSED.

SALES—WARRANTY OF QUALITY—BREACH OF WARRANTY—RESCISSION —TIME—RELIEF—PECUNIARY COMPENSATION.

Held:  1. In an action by the purchasers of a mill against the sellers on the ground of fraud in representations as to the condition of the mill, it appeared that plaintiffs discovered the fraud very shortly after they took possession, but that they continued to use the property, and accepted a written promise from one of the sellers to repair the boiler and engine, or furnish new ones; that the repairs were attempted to be made, but were ineffectual; and that the engine was changed for another, and other minor changes made in the mill, after which plaintiffs continued to run it for about six months, defendants in the meantime having disposed of the property which they had received for the mill at a price $650 less than they had allowed plaintiffs for the same. HELD, that it was error to allow a rescission of the contract, but that plaintiffs should have been awarded pecuniary compensation.

DENTON & ROBINSON, ATTORNEYS FOR APPELLANTS.

We take the ground:
1. That where a vendee seeks a rescission of a contract for

the sale of real estate in order to comply with the doctrine requiring the parties to be placed in *statu quo*, a properly executed and acknowledged deed should be tendered to the vender with the petition. An allegation that the plaintiff is willing and able to reconvey is insufficient.

2. The rule is, the party must make his election either to rescind the contract by restoring all that he obtained by it, in which event he may recover of the defendant what he has paid on it; or he may retain the property and sue for damages. In this case the plaintiff, by bringing the suit for rescission, chose the former method, and in seeking equity, he must do equity by returning the title unimpaired to the defendants.

3. The judgment which directs that the defendant, Wayne Hogan, be restored to immediate possession of the property and the keys directed to be delivered to him, that the notes for the purchase price of the mill and lot be cancelled, and that plaintiffs recover the full sum of $1,900 and costs of Hogan, does not place the parties in the same position they were in before the deal.

4. We insist that the doctrine of caveat emptor must apply in this case, and that appellees having seen the property they purchased, and made such inspection as they desired, and had ample opportunity to do so before purchasing, they must look for themselves and rely on their own judgment and can not complain.

5. Appellees must have tendered back the property as soon as they discovered the alleged defects, and failing to do this, but keeping and using it for nine months, they can not recover.

6. The parties having agreed in writing to keep the mill and let the contract stand, they waived their right to rescind, and their only cause of action, if any, is for a breach of contract.

7. Representations made by Hogan in making the sale merely praising and recommending the property, can not be regarded as warrantees.

### LIST OF AUTHORITIES CITED.

Ency. Plead. & Prac., vol. 18, pp. 829, 831, 837, 838; Hail v. Cave, 3d B. Mon., 159; Humble's Heirs v. Hainkson's Heirs, 3 Marshall, 468, 4 Dana, 284; Buford v. Brown, 6 B. Mon., 553; Williams, etc. v. Carter, 3 Dana, 198; Kentucky Statutes, secs. 490, 495, 501, 505, 2134, 470; Brown v. Witter, 10 Ohio, 142; Hammond v. Wallace, 85 California, 531; Bernard v. Kellogg, U. S. Supreme Court Reports, vol. 19, Law Edition, pp. 987, 989; Adkins v. Blake's Admr., 3 J. J.

Marshall, 40; Lightburn v. Cooper, 1 Dana, 274; Marshall v. Peck, 1 Dana, 609; Newton v. Long, 13 Ky. Law Rep., 698; Crawford v. Duncan, 6 Ky. Law Rep., 749; Stewart v. Daugherty, 3 Dana, 380; James Bros. v. McEwin, 91 Ky., 377, 12 R., 966; Brooke v. Duckwall, 23 Ky. Law Rep., 1459, 1460; Peak v. Gore, 94 Ky., 534; Lyon v. Osborne, 7 Ky. Law Rep., 305; Bailey, etc. v. Nichols, Sheppard & Co., 8 Ky. Law Rep., 64; Spaulding v. Tucker, 21 Ky., Law Rep., 223; Dent v. Murphy, 13 Ky. Law Rep., 46; Clark v. Smith, 10 Ky. Law Rep., 196.

WOOD & RICE AND S. A. RUSSELL, ATTORNEYS FOR APPELLEES.

The determination of two questions settles this case.

1. Did Hogan, in making the sale, represent the mill to be as good as new? If so, was it as good as new, and do as good work as new?

2. When appellees took possession thereof, was the mill defective and not capable of doing good work? If so did Hogan repair it and make it good as new and do as good work as if new?

Ancillary to the vital questions are the following:

(a) Did appellees know, or by the use of ordinary prudence could have known the condition of the mill before and at the time they bought it?

(b) Did appellees in the purchase of the mill rely upon the representations and guarantee of Hogan, and did such representations and guarantee induce the purchase of the mill?

(c) Have appellees done or omitted to do any act that, in justice, should relieve Hogan of the covenant of his guarantee?

3. The proof shows that the defects in the mill, were latent, covered up with grease, dust, flour and meal, and could only be discovered by actual operation of the mill, not merely by seeing it in motion.

4. A person knowingly selling property with material latent defects, without disclosing same to buyer, is guilty of fraud entitling the buyer to avoid the sale.

Hogan made a false representation that the mill was as good as new, and so guaranteed it. He intended appellees to rely on same. Appellees did in fact so rely, and having so relied, it is immaterial whether or not appellees had information, or the means of such.

5. Caveat emptor applies to implied warranties, not to expressed warranties. Here the warranty was positive and emphatic.

6. As to injury alleged to have been done by appellees in re-

pairing the mill, we insist (1), that the claim is imaginary, (2) not supported by the evidence, (3) were directed by Hogan's agent, (4) that the charge so made are the acts of Hogan, and he can not complain of the consequences, and (5) that what appellees did to the mill was beneficial.

7. Even if the rule required a tender of deed by appellees with their petition, this was waived by appellant's failure to demur to the petition and was cured by appellant's pleadings and the judgment.

The judgment of the chancellor should be affirmed.

### LIST OF AUTHORITIES CITED.

Lawson's Rights, Remedies and Practice, vol. 5, sec. 2373, p. 3956, 57 Am. Dec., 720; Lawson's Rights, Remedies and Practice, p. 3942, sec. 2363, 43 Am. Dec., 651; Lawson's Rights, Remedies and Practice, p. 3933, secs. 2347-8; 72 Am. Dec., 563; 13 Am. Dec., 265; 15 Am. Dec., 105; Lawson's Rights, Remedies and Practice, p. 3938, sec. 2355; Debell v. Stephens, 3 Barn., 623; Lawson's Rights, Remedies and Practice, vol. 5, p. 3952, sec. 2370; Lawson's Rights, Remedies and Practice, vol. 5, pp. 3978-9, secs. 2386-7; 2 Am. Dec., 113; Civil Code, sec. 27; Breckinridge v. Moon, 3 B. M., 635; Mells v. Lee, 6 Mon., 99; Perkins v. Rice, Litt. Select Cases, 219; Upshaw v. Debow, 7 Bush, 447; Ruffner v. Ridley, 81 Ky., 165 (4 R., 958); Prewitt v. Trumble, 92 Ky., 176 (13 R., 581); Hanks v. McKee, 2 Lit., 228; Grant v. Shelton, 3 B. M., 423; Robertson v. Clarkson, 9 B. M., 507; Hughes v. Robertson, 1 Mon., 216; Peak v. Gore, 94 Ky., 536.

OPINION OF THE COURT BY JUDGE NUNN—REVERSING.

It appears that appellants, Wayne Hogan and J. P. Gaddie, were the owners of a flour mill, and site, in the town of Wickliffe, Ballard county, Ky.; that they sold this property to appellees on or about the 8th day of April, 1901, for the sum of $6,300. Appellees, by their contract, agreed to pay $2,300 in cash, or its equivalent, and executed their four notes, of $1,000 each, due in one, two, three and four years. Appellants made and executed a deed to appellees for this property on the terms stated, and delivered same to appellees on the 15th day of April, 1901, and agreed to, and did,

accept from appellees, in lieu of the cash payment of $2,300, a small tract of land, at the price of $700, and a traction engine, a boiler, a saw rig, and threshing machine at the price of $1,200. For the balance of the $2,300, to wit, $400, the appellants accepted appellee's note. Appellees took possession of the mill at Wickliffe, and commenced to operate it, and found the mill in bad condition—the boiler and engine almost worthless, and the sifters and bran dusters worn and in bad condition. Within a few weeks they notified Wayne Hogan of the condition of the mill, and he promised to repair it. Nothing was done in the way of repairs until the 10th day of August, 1901, when Wayne Hogan, one of the appellants, made and executed the following writing: "This is to show that I will, and do hereby and herein promise and agree, immediately to repair and make good as new the engine and boiler of the mill sold to B. W. Tucker & Son, this year, in Ballard county, Kentucky, and when repaired and fully tested by said Tucker & Hogan, if said boiler or engine fail to do as good work as if they were new, then in that event I will at once purchase new ones and put in the said mill instead of the old ones and do this at my own expense and cost. This August 10th, 1901. [Signed] W. Hogan. Appellant Hogan sent George Stephenson, a millwright, from Taylor county to Ballard, to repair the engine and boiler. Stephenson arrived there about the 15th of August, 1901, and worked on the boiler about 13 days, but did not succeed in making it a good one. He found the engine in such bad condition that he did not attempt to repair it. G. W. Tucker, after consultation with Stephenson, exchanged the engines for another one, and changed the position of the boiler, and made other changes of minor consequence; and in this condition appellees attempted to run the mill until about the 1st of March, 1902, when

they abandoned or ceased to operate it, and tendered it to appellants, and demanded the return of the amount they had paid on the mill. Appellants refused to rescind. Appellees on the 13th day of March, 1902, brought this action in the Taylor circuit court. In their petition they made two paragraphs: (1) They alleged fraud on the part of appellants, and made the necessary allegations with reference thereto; (2) they alleged that appellants warranted the mill in all particulars to be as good as new, and that it was worthless, and that they had been damaged in the sum of $4,000, and other sums. In their prayer they asked for a rescission, and, if that could not be had, then a judgment for damages upon the warranty. The court on motion of appellants, compelled appellees to elect which paragraph they would prosecute—the first, for rescission on the grounds of fraud, or on the warranty—and appellees elected to prosecute the action under the first paragraph. The case was prepared and tried, and the lower court adjudged that the contract be rescinded, and that appellees recover of the appellants the sum of $1,900, with interest from the date of the trade, to-wit, 8th of April, 1901.

Appellants complain of this judgment, and say that they did not deceive, or commit any fraud upon, appellees, in making the sale of this property to them, but, if they did, the appellees failed to ask for a rescission within a reasonable time after the discovery of the fraud, and that appellees had used the property for 10 or 11 months, had exchanged the engine for another, had changed the situation of the boiler and had made other minor changes in the property; that, before the appellees asked for a rescission, they (appellants) had sold the land and machinery which they had received in part pay for a much less sum than they had allowed appellees in the trade, to wit, the land at $650, for which they had allowed

appellees $700, and the machinery at $600, for which they had allowed appellees $1,200.

We are of the opinion, from the facts as shown by the record, that appellees were deceived in the trade, and that they were and are entitled to relief. It is shown that appellants represented the mill and machinery to be all right in every respect, and as good as new, and that at the time the engine and boiler and other minor parts were damaged and almost worthless. J. P. Gaddie must have known these facts, as he was at the mill and in charge at the time the damage occurred. But it is not made clear that Hogan, the partner, and the other appellant, on whose statement appellees alleged they relied, was acquainted with the injured condition of the mill, as he resides in Taylor county, and did not visit the mill often. But in view of all the facts and circumstances proven, this court would not feel inclined to disturb the finding of the lower court in rescinding the trade on the ground of fraud and deception practiced by appellants, provided the rescission would have placed the parties in statu quo, or nearly so.

The question then to be determined is did appellants elect to rescind within a reasonable time after the discovery of the fraud practiced upon them? If so the judgment should be affirmed; otherwise reversed. In the case of Hoggins v. Becraft, 1 Dana, 31, the court said: "The law has not defined reasonable time." It can not be defined by any prescribed rule. What is reasonable in one case may be unreasonable in another case. What is reasonable in any case must be ascertained by the application of reason to the facts which characterize the particular case. Delay for one week after full discovery may be unreasonable in some cases. A much longer delay may in other cases be reasonable. The injured party should observe ordinary vigilance and good faith. He

should not, by culpable negligence or by design, subject the other party to unnecessary inconvenience, loss, or hazard; and, whenever he offers to return the property, it should be in as good condition as it was when he might have first returned it after full discovery of its defectiveness so as to place both parties as near as possible in statu quo.    All this may appear in a supposable or possible case, even though months may have elapsed.    It may not appear in another possible case in which one week had evolved.    Time, in the abstract, is not essential.    It is material so far only as, when associated with other circumstances, it may produce injurious or unjust consequences.    The great object of the rule of law on this subject is to prevent injury or wrong to the vendor; and the main question in every such case should be, has he any just cause to object to the rescission of the contract; has he been trifled with; will he have suffered by unnecessary and, improper delay?"    In the case of Colyer v. Thompson & Johnson, 2 T. B. Mon. 18, the court said: "Nor will a court of equity in every case set aside a contract on the ground of fraud. Where the injured party, within a reasonable time after he has discovered the fraud, makes his election to disaffirm the contract, and offers to restore the property, a court of equity will, at his instance, interpose and set it aside. But if, after discovering the fraud, he still retains the property, and uses it as his own, and makes no offer to restore it, or does not otherwise evince a determination to avoid the contract, a court of equity will not set it aside."    And in such case he must get relief in damages.    The case of Ruffner, etc., v. Ridley, etc., 81 Ky. 169, 4 R., 958, was where a party sought relief from a contract obtained by fraud, and the court said: "A court of equity will rescind if the circumstances are such that the parties can be put in the condition they were in at the time of the execution of the contract, but,

if these elements do not concur, the chancellor will decree
compensation if the fraud is proved, and a substantial in-
jury has resulted therefrom.   Whenever there is fraud, with
a resulting injury of a substantial character, a court of equity
will give relief, either by rescission or pecuniary compen-
sation."   In the case of Bernard Leas Mfg. Co. v. Waller
(18 R., 346) 36 S. W. 531, the court said: "He might have,
within a reasonable time after discovering the breach of
warranty or worthlessness of the machine, offered to return
the machine, and, if his cause of action was well founded, he
would have been relieved from any liability for the price or
value of the same, and might have had such other relief as
he showed himself entitled to; but, not having done so, the
judgment, etc., should not be allowed to stand."   In 1
Bigelow on the Law of Fraud (Ed. 1888) 436, the author
says: "The defrauded party to a contract has but one election
to rescind the same.   If he once determine his election, it
is determined forever.   Hence if it be shown that he has at
any time after knowledge of the fraud, either by express
words or by unequivocal acts, affirmed the contract, his
election is irrevocable.   Nor has the injured party power to
keep the question of election open so long as he will.   The
rule of law upon this point is this:   So long as the defrauded
person has made no election, he retains the right to de-
termine it either way, provided that, in the interval while he
is deliberating, an innocent third party has not acquired an
interest in the property, or that in consequence of his delay
the position of the wrongdoer himself has not been substan-
tially affected."

The appellees prove that they discovered the fraud in a
few days after May 1, 1901; they kept and used the prop-
erty; accepted a written promise from appellant Hogan to
repair boiler and engine, or furnish new ones; the repairs

were attempted to be made, the engine was exchanged for another, and other changes made in the mill; and then appellees continued to run the mill until about the 1st of March, 1902. In the meantime, appellants disposed of the property which they took from appellees at the price of $650 less than they had allowed appellees for same. Under these circumstances, the court should not have rescinded the contract, but should have granted appellees relief by giving them pecuniary compensation.

The judgment is reversed, and cause remanded for further proceedings consistent with this opinion.