HELEN SCHULTZ, Appellee, v. NATHAN ENLOW et al., Appellants.

**ASSAULT AND BATTERY:** Actions—Immaterial Evidence. In an
1 action for assault and false imprisonment committed by a mayor and a city marshal, evidence of violations by plaintiff of an ordinance is inadmissible when it appears that, on the occasion in question, no attempt was made to arrest plaintiff for such violations, and when the pleadings are silent as to justification and mitigation.

**DAMAGES:** Exemplary Damages—Malice As Basis. Exemplary damages
2 ages are allowable for malicious assault and false imprisonment.

**TRIAL:** Verdict—Allowable Joint Verdict. A joint verdict in an action
3 tion for an unlawful arrest and false imprisonment is allowable against those shown to be acting in concert.

TRIAL: Instructions—Requested Instructions—Nominal Damages. In-
4 structions as to nominal damages need not be given, in the absence
of a request.

NEW TRIAL: Verdict—Excessiveness. Verdict for $1,500 for assault
5 and false imprisonment held not excessive.

Headnote 1:   5 C. J. p. 667; 25 C. J. p. 541.   Headnote 2:   5 C. J. p.
705; 25 C. J. p. 563.   Headnote 3:   5 C. J. p. 698; 25 C. J. p. 554.
Headnote 4:   38 Cyc. p. 1693.   Headnote 5:   5 C. J. p. 709; 25 C. J. p.
568.

Appeal from Black Hawk District Court.—E. B. STILES, Judge.

NOVEMBER 24, 1925.

REHEARING DENIED APRIL 9, 1926.

ACTION to recover damages for an assault and for false
imprisonment.   Verdict and judgment for plaintiff, and the
defendants appeal.—Affirmed.

J. B. Newman and Merner & Merner, for appellants.

V. L. Belt and Mears & Lovejoy, for appellee.

STEVENS, J.—This is an action to recover damages for an
alleged assault and battery and for false imprisonment, against
Refshauge and Enlow, who were, at the time of the occurrence,
mayor and city marshal, respectively, of Cedar Falls, Iowa.

Appellee operates a motor bus line between Mason City
and other points, which passes, en route, through Cedar Falls,
the ordinances of which require operators of motor bus lines to
maintain an office or waiting room in said city, and to secure a
license therefrom.   Appellee was, and had been for some time,
operating her bus line through said city in violation, and per-
haps defiance, of such ordinances.   About 1 o'clock P. M.,
August 11, 1922, she went to the office of the mayor, according
to her testimony, to make application for a bus license.   There
is considerable conflict in the evidence as to what occurred at
the office and on the street immediately after appellee left the
office, but it is admitted that some feeling was aroused  on the

part of appellee, and perhaps both parties, during the conversation that ensued. Appellee testified that she was alone, and that appellant Refshauge refused to give her an application for a bus license, and told her that she would have to cease operating busses through the city; and that she replied that there was no law to prevent her doing so. Appellee further testified that she left the office, and, after she had walked a short distance on Main Street, the appellant Enlow grabbed her by the arm and told her that the mayor wanted her to come back to the office; that she refused to go; that Enlow jerked her and forcibly and violently attempted to take her back; that she hit him with her hand-bag; that he grabbed her with both hands around her throat and choked her; that her hair was disheveled and the sleeve torn out of her jacket; that her arms and throat were bruised and discolored; and that, upon her return to Charles City, she consulted a physician, who prescribed treatment for her throat, which had become swollen. Refshauge remained in his office. He testified that he ordered the marshal to bring appellee back to the office. Enlow testified that, when she was in the office, she called the mayor a "darned old fool," and said he did not know what he was talking about; that, when he apprehended her, outside of the office, he first requested her to return with him; that she said, "I am not going back there to see that darned old fool again;" that he took hold of her arm, and that she commenced pounding him over the head with her hand-bag; that he then grabbed her wrists and held them; that she tried to throw herself on the sidewalk, and resisted all she could; but that he compelled her to return to the office.

Sometime after this occurrence, and based thereon, an information was filed against appellee before a justice of the peace, charging her with resisting an officer. Both appellants testified as witnesses upon the trial before the justice. Enlow then testified that he did not have a warrant; that he did not inform appellee that she was under arrest; that she was walking peaceably along the street when he took hold of her; and that she was not engaged in the commission of a public offense. He further testified upon the trial below as follows:

"Q. What offense, if any, did you arrest Miss Schultz for? (Same objections. Overruled. Plaintiff excepts.) Q. Or take her into custody for? A. Well, for the abuse of the mayor, calling him a darned old fool in his own office, and saying she was going ahead with her bus business in spite of any ordinance we might have. Q. And was that the only reason? A. The only reason."

The appellant Refshauge testified upon the trial before the justice as follows:

"Q. Do you remember that she was brought into your presence by Mr. Enlow last Saturday? A. Yes, sir. Q. You knew that he brought her in there forcibly and against her will? A. Yes. Q. And that was not according to your orders, Mr. Refshauge? A. I told Mr. Enlow to bring her back—not forcibly. Q. You simply wanted to see her? A. Yes, sir. Q. You had no charge against her? A. No. Q. Mr. Enlow didn't have any written warrant issued by you to take her into custody? A. No, sir. Q. Your remarks to Mr. Enlow were in the order of a request? A. No, it was an order. Q. What right did you have to give him an order, as mayor of Cedar Falls, of that character? A. I think I had certain rights. Q. Where do you find it in the city ordinances? (Objected to and question not answered.) Q. So you ordered the marshal to bring this woman before you? A. Yes, sir. Q. By force, if necessary? A. Yes. Q. You didn't expect him to use force? A. Yes, if necessary."

I. The separate answers of appellants to the petition, which is in two counts, admitted their official capacity, although this action is against them personally, and alleged that appellee was arrested by the marshal upon the order of the mayor, without a warrant, but alleged that she was detained a few minutes only. All other allegations of the petition were denied generally and specifically.

Appellants sought to show repeated violations by appellee of the ordinances of Cedar Falls relating to the operation of motor busses through said city, but were not permitted to do so.

**1. ASSAULT AND
BATTERY: ac-
tions: immate-
rial evidence.** Had the alleged attempted arrest of appellant been for the violation of a city ordinance, which she had resisted, evidence thereof, under a proper plea, would have been admissible. The mere fact that appellee was persisting in violating the ordinances of the city, however defiantly, afforded no justification for the commission of an assault upon her in the manner charged. Previous violations of the ordinance, so far as they related to what occurred at the time in question, were a mere incident. Appellant Enlow was not, as the evidence clearly shows, seeking to arrest appellee for the violation of a city ordinance, but his efforts were all directed to returning her forcibly to the mayor's office, in order that he might complete his conversation with her. Neither answer contained a plea in justification of the alleged assault and unlawful restraint of the person of appellee, or of facts in mitigation of damages. The evidence was properly excluded.

II.   The court permitted the jury to return a verdict for exemplary damages. The instruction on this point was one usually given in such cases. Exemplary damages for an assault

**2. DAMAGES: exem-
plary damages:
malice as basis.** and battery, where the acts charged were wantonly, recklessly, and maliciously done, are recoverable in this state. *Guengerich v. Smith,* 36 Iowa 587; *Ward v. Ward,* 41 Iowa 686; *Reddin v. Gates,* 52 Iowa 210; *White v. Spangler,* 68 Iowa 222.

The jury must have found from the evidence that appellee was not, at the time in question, engaged in the commission of a public offense, and that what occurred was not the result of a good-faith effort on the part of either of appellants to arrest her. The officer did not have a warrant, and had no right, under the facts disclosed, to arrest her. *Leighton v. Getchell* (Iowa), 169 N. W. 649 (not officially reported); *Scott v. Feilschmidt,* 191 Iowa 347; *Maxwell v. Maxwell,* 189 Iowa 7.

An arrest may be made by an officer without a warrant only when a public offense is committed or attempted in his presence, or where such offense has been committed and he has reasonable ground to believe that the person to be arrested is the guilty one. Section 13468, Code of 1924. An arrest may also be made, upon the oral order of a magistrate, of a person

committing or attempting to commit a public offense in the presence of such magistrate. Section 13470, Code of 1924. The foregoing provisions of the statute afford no protection to appellants, for the reason that they were not pretending to act under the authority thereof, nor could they have done so, as no public offense was being attempted or committed by appellee. No occasion existed, in any event, for arresting her without a warrant.

What is said above sufficiently disposes of the contentions of appellants that the recovery of exemplary damages should not have been allowed, and that appellants are excused from liability for the reason that in what they did they acted in good faith, in a lawful manner, and for a lawful purpose. The evidence fully justified a finding by the jury of such facts as entitled appellee to exemplary damages.

III. The court also instructed the jury that, if it found in favor of the plaintiff and against both defendants, it should return a joint verdict against them. The evidence quite conclusively shows that appellants acted in concert,

3. TRIAL: verdict: allowable joint verdict.

aiding and abetting each other both in the commission of the alleged assault and in the false imprisonment of appellee. In such circumstances, a joint verdict was proper. *Reizenstein v. Clark*, 104 Iowa 287.

IV. Several instructions were requested by appellants and refused by the court. Error in the ruling of the court thereon is urged by counsel in argument, but no proper exceptions were preserved in the court below to such rulings, and they cannot be reviewed on this appeal. Section 11495, Code of 1924.

V. It is also urged that the court should have given an instruction on nominal damages. The instruction of the court on the measure of damages is not set out in the record, and we

4. TRIAL: instructions: requested instructions: nominal damages.

must presume that it was both proper and satisfactory to appellants. It does appear from the record that the only question as to actual damages which the court submitted to the jury was the amount. Appellant does not assign error in the giving of this instruction. No instruction on the subject

of nominal damages was asked, and the omission thereof does not present a ground for reversal.

VI. A motion to direct a verdict was made by appellants at the close of all of the evidence. What we have said in discussing other propositions relied upon for reversal sufficiently disposes of any claim of error in the ruling of the court on the motion to direct a verdict.

VII. It is claimed that the verdict, which was for $1,500, is so excessive as to indicate passion and prejudice on the part of the jury. This was one of the grounds urged in the court below for a new trial. The court, in a written opinion, stated that he thought the verdict pretty large, but knew of nothing therein, or occurring at the trial, to indicate that it was the result of passion and prejudice. An exhaustive reading of the record satisfies us that passion and prejudice on the part of the jury are not shown by the record. It may be conceded that the verdict is rather large, but appellants filed no plea of justification or in mitigation of damages, and their acts were clearly unlawful and oppressive. The jury was not required to make a separate finding of the amount allowed as actual damages. She was not severely injured, but actual damages were proved.

5. NEW TRIAL: verdict: excessiveness.

We find no reversible error, and the judgment below is affirmed.—*Affirmed.*

FAVILLE, C. J., and VERMILION and ALBERT, JJ., concur.