EUGENE E. DRAKE, Plaintiff, Appellant, v. C. F. KEELING, Sheriff, et al., Defendants, Appellees; FRED BERG, Deputy Sheriff, et al., Defendants, Cross-appellants.

No. 45609.

September 23, 1941.

Rehearing Denied February 13, 1942.

Walter F. Maley and Joseph A. Dyer, for plaintiff-appellant.

Carl A. Burkman, for C. F. Keeling, defendant-appellee.

Stipp, Perry, Bannister & Starzinger and Donald Holdoegel, for Fidelity & Casualty Company, defendant-appellee.

Howard Hall and Comfort, Comfort & Irish, for Fred Berg and Massachusetts Bonding & Insurance Company, defendants, cross-appellants.

Howard Hall, Carr, Cox, Evans & Riley, and Ehlers English, for L. E. Forbes and Aetna Casualty & Surety Company, defendants, cross-appellants.

WENNERSTRUM, J.—The litigation that has occasioned this appeal is an action for damages for claimed false arrest brought by plaintiff against C. F. Keeling, sheriff of Polk county, Iowa, and two of his deputies, Fred Berg and L. E. Forbes. At the time of his arrest plaintiff was residing in Omaha, Nebraska, where he was employed as a truck driver. Plaintiff was taken into custody by the Omaha authorities on or about May 16, 1936 by reason of a telegram sent from the Polk county sheriff's office and over the signature of C. F. Keeling as sheriff. The deputies, Berg and Forbes, on instructions from a superior deputy sheriff, went to Omaha and assumed to arrest plaintiff and returned with him to Des Moines, inasmuch as he had waived extradition. The plaintiff was placed under arrest by reason of the filing of an information charging one J. O. Drake with the issuance of a false check. After plaintiff was returned to Polk county it developed that he was not the person who had issued the claimed false check and he was discharged from custody. He thereafter brought the action for damages by reason of his false arrest against Keeling, sheriff, and Berg and Forbes, the deputies, and their respective sureties.

This case has heretofore received the consideration of this court. At the first trial the district court directed a verdict in favor of the defendants. Appeal was taken to this court which reversed the trial court, holding that the evidence presented a jury question. This opinion is found in 287 N. W. 596. The facts as developed in the first trial, and as set out in the first opinion, are almost the same as those presented

in the second trial. Consequently a restatement of the facts will not be necessary except those required to be commented upon.

Upon the second trial the jury returned a verdict as follows: "We, the jury in the above entitled case find for the plaintiff and against the following defendant or defendants, C. F. Keeling, Fred Berg, Loren E. Forbes, and fix the amount of his recovery at $5500.00." In connection with the submission of the court's instructions and the verdict form, there was also submitted to the jury six interrogatories which as answered by the jury were to the effect that they found plaintiff entitled to actual damages against the defendant, C. F. Keeling, sheriff of Polk county, Iowa in the amount of $4,500 and against Fred Berg and Loren E. Forbes, the deputy sheriffs, each in the amount of $500. In answer to other interrogatories as to whether or not they found any exemplary damages against the sheriff and the deputies the jury answered each of them in the negative. Thereafter judgment was entered in favor of the plaintiff and against C. F. Keeling in the sum of $4,500 with interest at 5 percent and also against Fred Berg, deputy sheriff and L. E. Forbes, deputy sheriff, each in the sum of $500, with interest at 5 percent and for costs against each and all of said defendants.

The defendant, Fidelity & Casualty Company of New York, surety on Keeling's bond, as sheriff, filed a motion for a new trial and exceptions to instructions, and Keeling filed a like motion as an individual. The Fidelity & Casualty Company also filed a motion for arrest of judgment on the ground that there had been a misjoinder of parties defendant, and a further motion to vacate judgment for costs heretofore entered, which included judgment for costs entered in the supreme court after the first appeal. They claimed as a basis for the last motion a misjoinder of parties and also nonliability of either Keeling or his sureties for any acts or conduct of the sheriff or his deputies outside the state of Iowa. Keeling, individually, filed a motion in arrest of judgment for the same reasons. Keeling and his surety also filed a motion for priority of judgment and a resistance to the motion of the defendants, Berg and Forbes and their sureties, for priority of judgment. An additional

motion for order fixing and determining the order of liability was filed by Keeling.

Berg and Forbes and their sureties likewise filed a series of motions. A motion in arrest of judgment was filed by the Aetna Casualty & Surety Co., surety for Forbes. There was filed by Forbes and the Aetna Casualty & Surety Company a motion for judgment jointly against Berg and the Massachusetts Bonding & Insurance Company and Forbes and the Aetna Casualty & Surety Company in the amount of $500. Forbes and his surety jointly filed a motion in arrest of judgment, and they jointly filed a motion to fix order of liability, and a further motion to vacate judgment. Berg and the Massachusetts Bonding & Insurance Company also filed a motion in arrest of judgment, a motion to fix order of liability, and a further motion to vacate judgment, also a motion for judgment against them in the sum of $500, and the Massachusetts Bonding & Insurance Company filed a separate motion in arrest of judgment.

The court in ruling upon the several motions summarized the questions before it as follows:

1. Were Keeling, as sheriff, and his bondsmen liable for the acts of Keeling's agents or deputies outside of the state of Iowa?

2. Was there a misjoinder of parties defendant?

The court in its written memorandum, granting a new trial, held that it had been in error in submitting the issue of fact relative to the plaintiff's arrest in Omaha, Nebraska, and as to plaintiff being taken into custody there by the sheriff's deputies. The trial court held that the case of Kendall v. Aleshire, 28 Neb. 707, 45 N. W. 167, 26 Am. St. Rep. 367, and the McLean case [McLean v. State], 5 Cir., 96 F. 2d 741, should be followed and that these cases were sound authority for his admitted error in submitting the fact question relative to the deputies' acts outside the state of Iowa.

The court also held that it had been in error in that there had been a misjoinder of parties defendant and cited the following cases: Cogswell v. Murphy, 46 Iowa 44; Bort and Baldwin v. Yaw, 46 Iowa 323; Mendenhall v. Wilson, 54 Iowa 589, 7 N. W. 14; Prader v. National Accident Assn., 107 Iowa 431, 78 N. W. 60; Tackaberry Co. v. Sioux City Service Co., 154 Iowa 358, 134

N. W. 1064, 40 L. R. A., N. S., 102, Ann. Cas. 1914A, 1276; Dickson v. Yates, 194 Iowa 910, 188 N. W. 948, 27 A. L. R. 533; Producer's Livestock Marketing Assn. v. Livingston, 216 Iowa 1257, 250 N. W. 602.

The defendants, Berg and Forbes, and their respective sureties, did not ask for a new trial but the trial court held that it was within the power of that court to grant a new trial when it believed that in so acting it would accomplish justice. The court further held, in its ruling, that in the event the plaintiff elected to accept a joint judgment of $500 against the defendants, Keeling, Berg and Forbes, and their respective sureties, the order of liability should be first, against Berg and Forbes and their bondsmen, and next against Keeling and his bondsmen. It was the further ruling and order of the court that if the plaintiff elected to file a remittitur of all sums above the joint judgment of $500 against Keeling, Berg, and Forbes, and their respective bondsmen, judgment could be entered thereon, and in event of plaintiff's failure to file said remittitur, a new trial would be granted to all defendants.

The plaintiff did not elect to file said remittitur and has appealed from the various rulings and holdings of the court in granting a new trial. Forbes and his surety, and Berg and his surety, filed a cross-appeal on the ruling of the court granting a new trial on its own motion and upon other grounds incorporated in the motions filed and as set out in their specifications of error.

By reason of the verdict form returned by the jury, the answers to the interrogatories submitted by the court, and the numerous motions filed by the several parties it would appear that perhaps the court and counsel may have felt that they were lost in a legalistic maze. But from every such involved situation there is a way out and it shall be our purpose to endeavor to act as a guide for further consideration of this particular litigation.

█ █ Was the court in error in holding in its ruling on the motion for a new trial that the testimony relative to the plaintiff's arrest in Omaha, Nebraska and the acts of the deputy sheriffs in taking him into custody was improperly submitted to the jury? Unquestionably it will be admitted that a warrant of arrest issued in one state may not be executed in another state. As stated in American Jurisprudence, volume 4, section 19, Ar-

rest: "A warrant * * * has no validity beyond the boundaries of the state by whose authority it was issued." See also Law of Arrest, Perkins, Iowa Law Review, volume 25, page 223. The case of Kendall v. Aleshire, 28 Neb. 707, 712, 45 N. W. 167, 168, 26 Am. St. Rep. 367, which was relied on by the trial court in its ruling on the motion for a new trial developed by reason of an action that had been brought on a sheriff's bond. A Nebraska sheriff went into Kansas and obtained custody of Aleshire and in this case it was held:

"It was not his duty, nor had he the power, to arrest him out of the state. When he entered the state of Kansas, his acts were those of an individual without either the virtue of office or the color of office, * * *. Had he assaulted, imprisoned, or otherwise wronged Aleshire, in Kansas, but never brought him to this state, he alone would have been liable."

In McLean v. State of Mississippi ex rel. Roy, 5 Cir., 96 F. 2d 741, 745, where the sheriff of a Mississippi county assumed custody of a claimed defendant in Louisiana and also in Tennessee, it was held:

"In Louisiana and again in Tennessee he did not, because he could not, act either virtute or colore officii. He had neither office nor color of office as a Mississippi sheriff while in another State, where the Mississippi laws were not of force. Though the cases in Mississippi indicate that an officer may be held liable on his bond for acts which might elsewhere be held not official, we are satisfied that the surety for the holder of a mere county office is not bound by what his principal may undertake to do in another State. In such other State he is only a private citizen."

By reason of the fact that the trial court deemed the last two quoted cases as authority and followed the same in his ruling on the motion for a new trial, the question arises as to whether or not the act of the deputy sheriffs in making the arrest of the defendant in Omaha, Nebraska, even though extradition was waived, is of an actionable nature.

In 24 R. C. L. 965, section 59, it is stated:

"* * *. But according to many of the cases it is clear that the authority of an officer to do a particular act is not the proper

criterion of his liability, for the very simple reason that the basis of liability in every instance is want of authority, whether exercised under process or not; and so it is held to be rather incongruous that the rule should be relaxed in so far as the liability of an officer's sureties are concerned, where the officer goes to the extreme of acting in an apparently official capacity without any process whatever. The test should be: Would he have acted in the particular instance if he were not clothed with his official character, or would he have so acted if he were not an officer? * * *.''

In applying the above test it can be readily ascertained that the defendants, the deputy sheriffs, would not have acted in, the particular instance if they had not been clothed with their official character or had not been acting as officers. They were sent to Nebraska as deputy sheriffs by virtue of a warrant issued from an Iowa court. They were acting as custodial officers, at least, when in Nebraska, on account of that warrant. They were not assuming to act as individuals and their acts were at least *colore officii*. The distinction as to what is meant by virtue of office and by color of office has been commented upon in the case of Helgeson v. Powell, 54 Ida. 667, 684, 34 P. 2d 957, 963, wherein that court quotes from the case of Haffner v. United States F. & G. Co., 35 Ida. 517, 520, 207 P. 716, 717, as follows:

" 'Acts done *"virtute officii"* are those within the authority of the officer, when properly performed, but which are performed improperly; acts done *"colore officii"* are those which are entirely outside or beyond the authority conferred by the office.' "

It is our conclusion that a further statement from the case of Helgeson v. Powell, supra [54 Ida. 667, 688, 34 P. 2d 957, 965], is applicable here as expressing the attitude of this court in relation to the question now before us. It is there stated:

"We believe that the great weight of authority and the more modern decisions state the better rule: That it is immaterial whether the officer was acting by virtue of his office or under color of office, the surety is bound for his acts."

A holding to the same effect was made in an early Iowa case, Clancy v. Kenworthy, 74 Iowa 740, 743, 35 N. W. 427, 428, 7 Am. St. Rep. 508, wherein it was stated:

"But it is insisted that, as the constable is shown to have had no lawful authority to arrest plaintiff, his act was therefore not done in the line of his duty. In truth his act was in the line—direction—of official duty, but was illegal because it was in excess of his duty. In the discharge of official functions he violated his duty, and oppressed the plaintiff. This is all there is of it. If, in exercising the functions of his office, defendant is not liable for acts because they are illegal or forbidden by law, and for that reason are trespasses or wrongs, he cannot be held liable on the bond at all, for the reason that all violations of duty and acts of oppression result in trespasses or wrongs. For lawful acts in discharge of his duty he of course is not liable. It follows that, if defendant's position be sound, no action can be maintained upon the bond in any case. In support of our conclusions, see Tieman v. How, 49 Iowa, 312."

This Iowa case has been followed and favorably commented upon by decisions in numerous other states. See also Charles v. Haskins, 11 Iowa 329, 335, 77 Am. Dec. 148. In Yount v. Carney, 91 Iowa 559, 564, 60 N. W. 114, 116, it is stated:

"It is suggested in the argument for appellees that no breach of the conditions of the bond sued upon was shown, and that, therefore, the court properly directed a verdict for defendants. This contention is fully answered in Clancy v. Kenworthy, 74 Iowa 743, 35 N. W. 427, wherein the bond was conditioned the same as this. It was therein insisted that, as the constable had no lawful authority to arrest the plaintiff, his act was not in the line of his duty, and not a breach of the conditions of the bond. It was held that the arrest, being in the line of his official duty, though illegal, because in excess of the duty, was a breach of the conditions of his bond. See also Strunk v. Ocheltree, 11 Iowa 158; Charles v. Haskins, Id. 330."

See also City of Festus v. Kausler, (Mo.), 77 S. W. 197, 105 S. W. 2d 646, 649; State ex rel Verdis v. Fidelity & Casualty Co.

of New York, 120 W. Va. 593, 598, 199 S. E. 884, 886; Abbott v. Cooper, 218 Cal. 425, 432, 23 P. 2d 1027, 1029; Greenius v. American Surety Co., 92 Wash. 401, 407, 159 P. 384, 385, 386; Lammon v. Feusier, 111 U. S. 17, 20, 21, 4 S. Ct. 286, 287, 28 L. Ed. 337, 338, L. R. A. 1917F, 1134; Hodgson v. Hatfield, 112 Okla. 134, 240 P. 69. See also 1 Anderson on Sheriffs, Coroners and Constables (1941) 57, section 62 and citations there noted.

By reason of the expressions of the authorities last referred to and our conclusion as to the correctness of their holdings it is our holding that even though the acts of the defendant deputies in Nebraska were void and without legal authority yet they were unquestionably *colore officii* and the evidence of their acts in Nebraska was properly submitted to the jury.

██ It was the further thought of the court, as expressed by its written memorandum in ruling on the motion for a new trial, that there was a misjoinder of parties defendant. Was the court correct in reaching this conclusion? It is contended by the appellant that all the defendant officers were joint tortfeasors and were jointly liable because of the false arrest of the plaintiff by the defendant deputies.

In this connection several statutory enactments may advisably be set forth. Attention is called to section 5238, 1935 Code of Iowa, where in relation to the appointment of deputy county officers, it is stated:

"Appointment. Each * * *, sheriff, * * *, may, with the approval of the board of supervisors, appoint one or more deputies or assistants, respectively, not holding a county office, for whose acts he shall be responsible. * * *."

Section 5242, of the 1935 Code of Iowa sets forth the powers and duties of deputies and is as follows:

"Powers and duties. Each deputy, * * * shall perform such duties as may be assigned to him or her by the officer making the appointment, * * *."

In section 1069 of the 1935 Code of Iowa the nature of the bonds of deputy officers is set forth:

"Bonds of deputy officers. Bonds required by law of deputy * * *, county, * * * officers shall, unless otherwise pro-

vided, be in such amounts as may be fixed by the * * *, board of supervisors, * * *, as the case may be, with sureties as required for the bonds of the principal, and filed with the same officer. The giving of such bond shall not relieve the principal from liability for the official acts of the deputy."

Relative to the filing and custody of official bonds, Code section 1077, 1935 Code of Iowa, is as follows:

"Custody of bond. The bonds and official oaths * * * shall, after approval and proper record, be filed:

    *   *   *

"3. For county and township officers, except those of the county auditor, with the county auditor."

A further statutory enactment relative to a deputy and his bond is noted in section 5241 of the 1935 Code, which is as follows:

"Qualifications. Each deputy shall be required to give a bond in an amount to be fixed by the officer having the approval of the bond of his principal, with sureties to be approved by such officer. Such bond when approved shall be filed and kept in the office of the auditor. Each deputy shall take the same oath as his principal, which shall be indorsed on the certificate of appointment."

Code section 5498 of the 1935 Code sets forth the duties of the sheriff in relation to the care and custody of prisoners and is as follows:

"Duty. The sheriff shall have charge and custody of the prisoners in the jail or other prisons of his county, and shall receive those lawfully committed, and keep them until discharged by law."

As bearing upon the question of misjoinder of parties, attention is called to section 882 of the Restatement of Law of Torts where relative to joinder of parties it is stated:

"Where each of two or more persons is liable for the full amount of damages which are allowed for a single harm resulting from their tortious conduct, the injured person can

properly maintain a single action against one, some, or all of them.''

The editorial comment relative to this section is as follows:

''The rule stated in this Section permits joining in one action any number of tortfeasors, each of whom is responsible for the entire amount of damages for which the action is brought. It applies where master and servant or principal and agent are both liable for the tort of the servant or agent, where the defendants cooperate in causing the harm * * * , where one of them is liable because he directs or permits the other to act * * * , where they are liable because they are co-owners or subject to a common duty * * * , and also where there are concurrent or successive independent acts by two or more persons each of which is a legal cause of the harm * * * . This is true even though one of the parties is under a greater liability to the injured person than the other, provided suit is brought only for that harm as to which there is common liability.''

As to the amount of the judgment further editorial comment is as follows:

''Apart from statute, in an action brought against two or more persons, the amount of damages given in the judgment against each must be the same. This common law rule, however, has been modified by statutes in many States.''

The deputy sheriffs, Berg and Forbes, acting on instruction of a superior deputy sheriff took plaintiff into custody in Omaha and brought him to Des Moines where he was placed in the Polk county jail, in which place of confinement, as shown by Code section 5498, 1935 Code of Iowa, the sheriff is charged with the care and custody of prisoners. We are of the opinion that in all these acts the defendant officials acted as joint tortfeasors. As previously quoted from the text of the Restatement of the Law of Torts, supra [section 882], the rule as to the bringing of a single action applies,.'' * * *, where the defendants cooperate in causing the harm * * * , where one of them is liable because he directs or permits the other to act * * * and also where there are concurrent or successive independent

acts by two or more persons each of which is a legal cause of the harm." Consequently we hold that the defendant officers were joint tort-feasors and were properly joined as defendants. This cannot be said, however, concerning the sending of the telegram over the signature of Keeling and the arrest of plaintiff pursuant thereto by the Omaha officers. As to such acts Berg and Forbes are not joint tort-feasors.

▇▇ If all the parties are joint tort-feasors under the authorities as previously stated, damages are not severable or apportionable among the wrongdoers. Such was the holding in Turner v. Hitchcock, 20 Iowa 310, 318, where it is stated:

"It is also settled that the damage is not severable or apportionable between the wrongdoers, but the act of each is the act of all. Not only so, but unlike the case of joint demands arising ex contractu, there is no contribution among tort-feasors, who have all knowingly committed a wrong. * * *."

A statement to the same effect is found in Reizenstein v. Clark, 104 Iowa 287, 292, 73 N. W. 588, 590, where it is stated:

" * * *. But, in any event, the charge, as applied to the facts in this case, was correct. The jury must have found, under the instructions, that the assault was a joint one. If so, and if one of the participants was actuated by malice, this condition of mind will be attributed to the other, and each held liable for all damages, both actual and exemplary, resulting from the assault. So the court instructed, and such is undoubtedly the law. * * *."

In Schultz v. Enlow, 201 Iowa 1083, 1088, 205 N. W. 972, 974, it is held as follows:

"The court also instructed the jury that, if it found in favor of the plaintiff and against both defendants, it should return a joint verdict against them. The evidence quite conclusively shows that appellants acted in concert, aiding and abetting each other both in the commission of the alleged assault and in the false imprisonment of appellee. In such circumstances, a joint verdict was proper."

As further authority for the return of a joint verdict at-

tention is again called to the editorial comment found in the Restatement of the Law of Torts, supra [section 882], where it is stated: "Apart from statute, in an action brought against two or more persons, the amount of damages given in the judgment against each must be the same. This common law rule, however, has been modified by statutes in many States." It has not been so modified in Iowa. See Code section 10972, 1935 Code of Iowa; also McDonald v. Robinson, 207 Iowa 1293, 1295, 224 N. W. 820, 62 A. L. R. 1419.

Our attention has been called to the case of Brayton v. Town, 12 Iowa 346, 347, 348, which might appear to be authority for the conclusion that the sheriff is alone liable for the acts of his deputies. In this last case it is held:

"Under the provision of §411, the sheriff is made responsible for the acts of his deputy. Where money has been collected by a deputy sheriff, upon an execution, and he refuses * * * to pay over the same, the remedy is upon the bond of the sheriff, and not against the deputy and his sureties."

In this connection it should be noted that section 411 of the Code of 1851 provides that the sheriff, and other county officers, "shall appoint a deputy for whose acts he shall be responsible and from whom he shall require bond; * * *." Section 5238 of the 1935 Code as previously quoted sets forth and states that the sheriff, and other county officers, "may, with the approval of the board of supervisors, appoint one or more deputies * * * for whose acts he shall be responsible." However, the bond of the deputy sheriff, as shown by section 1069 of the 1935 Code, "shall, unless otherwise provided, be in such amounts as may be fixed by the * * * board of supervisors * * * with sureties· as required for the bonds of the principal, and filed with the same officer."

In section 1072 of the 1935 Code wherein the subject matter is that of the beneficiary of the bond it is stated that "All bonds of public officers shall run to the state, and be for the use and benefit of any corporation, public or private, or person injured or sustaining loss, with a right of action in the name of the state for its or his use." It will therefore be noted that there is a distinction between the nature of the bond obligation re-

quired under the Code of 1851 and that required by the 1935 Code.

In the case of Headington v. Langland, 65 Iowa 276, 278, 21 N. W. 650, 651, a like comment to that found in the case of Brayton v. Town, supra, is made relative to the liability of the sheriff for the acts of his deputy. However, it should be again observed that the statutory provision in the Code of 1873 which was in force at the time the last litigation developed had the same provision as was found in the Code of 1851 which has heretofore been quoted. It will also be observed that the Code provisions relative to a deputy sheriff's bond were not the same at the time of the writing of the opinions in the last two cases, as are found in the present Code. Consequently these two cases are not authority in the present situation.

By reason of the foregoing authorities, Keeling, Berg and Forbes were properly joined as to the acts complained of wherein they acted jointly. But plaintiff was not entitled to recover against Berg and Forbes for acts of Keeling in which they did not participate. The only verdict that could be returned had to be based upon items of damage for which all three were liable. The answers to the interrogatories show that a different verdict was returned against Keeling than Berg and Forbes. This inconsistency between the verdict and the answers to the interrogatories vitiated the general verdict. Section 11514 of the 1935 Code is undoubtedly justifiable authority for granting a new trial under all the facts in the case. This Code section is as follows:

"Findings inconsistent with verdict. When the special finding of facts is inconsistent with the general verdict, the former controls the latter, and the court may give judgment accordingly, or set aside the verdict and findings, as justice may require."

The court afforded plaintiff an opportunity to correct this error by remittitur. The plaintiff refused to so elect. The granting of a new trial was then the only other alternative. It was properly granted.

A further ground for appeal on the part of the plaintiff is the trial court's ruling wherein it sustained a motion to

strike and a demurrer to an amendment to the petition wherein it was alleged that after plaintiff was released by the justice of the peace before whom the original charge was filed, he was required by the two defendant deputy sheriffs to accompany them to Cameron, Missouri and Kansas City, Missouri and was lodged for a part of the time in the city jail of Kansas City, Missouri. It is plead that the allegations of this amendment, filed on January 10, 1940 are barred by the statute of limitations. (Section 11007, subsection 4, of the 1939 Code of Iowa.) It is our conclusion that the court was correct in its ruling.

It is also our conclusion that the court was not in error in granting a new trial, under its discretionary power and for the reasons previously stated. Upon appellant's appeal the trial court is affirmed. Undoubtedly upon a retrial the several questions, that have arisen on this appeal will not again occur. Our comments as heretofore made dispose of the claimed errors as set out in cross-appellant's appeal. We therefore hold these claimed errors are without merit and the trial court should be affirmed on the cross-appeal.

Affirmed on both appeals.—Affirmed.

MILLER, C. J., and GARFIELD, HALE, and BLISS, JJ., concur.

STIGER, J., dissents.

STIGER, J. (dissenting)—I dissent from that part of the opinion holding the acts performed by the deputies beyond the boundaries of this state were under color of office.