LEON ZANKS *v.* WALTER FLUCKIGER ET AL.

SUPERIOR COURT     TOLLAND COUNTY     FILE NO. 8083

Memorandum filed March 20, 1961

*Pigeon, Gnutti, Kahan & Shannon,* of Rockville, for the plaintiff.

*Flaherty, Hannabury & Baum,* of Rockville, for the named defendant.

*F. Owen Eagan,* of Hartford, for defendant Robert K. Ahnert.

COTTER, J. Plaintiff sues in assault and battery, false imprisonment and trespass against Robert K. Ahnert, a Rockville policeman, and Walter Fluckiger, an Ellington constable who, while appointed a deputy sheriff for Tolland County, had not given a bond to the high sheriff as required by § 6-39 of the General Statutes.

The facts evolved in a Pickwickian fashion when a Mr. and Mrs. Ott, who live on Lower Butcher Road, Ellington, observed a parked car while riding home on this road with their family after swimming at the lake in the early evening of July 21, 1959. As they passed the car, a woman was heard to call "Help! Help!" After arriving home, they became curious and returned to the parked car, and this time the woman entreated, "Help! Help! Please help!" A man later identified as Zanks was standing by the car on both occasions. The Otts drove to the home of Robert Fluckiger, brother of the defendant Walter Fluckiger, and told Mrs. Ann Fluckiger that there was someone "in distress that needed help." Thereafter, the defendant Walter Fluckiger received a telephone call from Ann Fluckiger that there was a "car down the road" and a woman calling "Help!" So he drove to the area in Ellington and a girl known to him as Judy pointed out a car which had been parked and was driving away. He followed it across the Ellington town line into Rockville, watched it from Lanz's fruit stand and proceeded to "Bar 83," where he telephoned the Rockville police. He then returned to the fruit stand and waited for the police cruiser. Ahnert later arrived there in the cruiser, and

Fluckiger went with him to Zanks's house in Rockville, arriving about 9:59 p.m. About one hour had transpired between the time Walter Fluckiger got the call and the time he arrived with Ahnert at Zanks's house. When they stopped the cruiser in front of the house, they saw Mrs. Zanks and talked to her. She was crying and said, "I'll explain to you. My husband is in back. Get him first and I'll tell you." Thereupon, they found Zanks sitting on the back steps of the house, and when they asked him, "What seems to be the trouble?" he answered, "I won't tell you nothing." Thereafter, a tussle ensued, a twister was applied and handcuffs placed on him, and he was taken to the Rockville police station. In the meanwhile, Fluckiger had gotten a statement signed by Mrs. Zanks, which recites the events in a peculiar way as follows: "[I]n Ellington he told you get out of the car and walk home, and you call to about three car to call police and one slow up and call me and was drinking today and was using very bad lanage [sic] and when in Stafford he stop the car and slapped me."

Testimony in court disclosed that Zanks had been in their house trailer in their camp at Stafford earlier in the day and had argued most of the day about a watch Mrs. Zanks had pawned. They left camp about 8 p.m. and, according to the story told Fluckiger by Mrs. Zanks, her husband stopped the car in Stafford and slapped her. Zanks claims he stopped in Ellington because she was in the back seat talking too loud and arguing and he got out of the parked car and stood alongside of the car, telling her he would not take her home until she stopped "hollering."

After the defendants got Zanks to the police station, they took the cuffs off and Fluckiger called George Gorsky, the trial justice in Ellington and explained "the family argument." Gorsky said that

"most of it took place in Stafford, nothing in Ellington to hold him on," and Fluckiger told Officer Ahnert he was instructed to release Zanks. Thereupon, they took Zanks back home. Walter Fluckiger did not act as a deputy sheriff at the time. He considered himself as acting as a constable for the town of Ellington, wore his badge as a constable pinned on his coat, and could not act as a deputy sheriff until he posted a bond as required by § 6-39 of the General Statutes, nor could he act as a de facto deputy sheriff. 43 Am. Jur. 240, § 494; *Plymouth* v. *Painter,* 17 Conn. 585, 593. As a constable, he had no right to arrest Zanks in Rockville, outside his precincts, without a warrant; General Statutes § 6-49; and such an arrest is illegal and ground for an action for false imprisonment. *Sims* v. *Smith,* 115 Conn. 279, 284; 35 C.J.S. 648. The statute permits a constable to arrest without a warrant, in his precincts, when a person "is taken or apprehended in the act or on the speedy information of others." The statement taken by Fluckiger from Mrs. Zanks, even after the arrest, did not spell out an offense in Ellington or Rockville of which there was information, let alone speedy information. Nor does the complaint report of Ahnert disclose any. He merely says the complainant was "W. Fluckiger, constable, Ellington," and complaint "as follows via telephone—he is acting on a complaint from Ellington," and then continues, "Assisted Constable Fluckiger [sic] with bringing Leon Zanks to office. He had a complaint from Mrs. Zanks and she wanted him arrested when we got to the house on Bellevue Ave." Then he describes the difficulty in arresting Zanks and bringing him to the station.

Unfortunately, this was a tragedy of errors. The defendants attempted in an inept way to straighten out a family quarrel which resulted in an arrest several towns away from where the misdemeanor,

if any, had occurred. They meant well, evidently, but their deeds were fraught with many legal and technical irregularities and inconsistencies, due in large part to a failure to make a detailed and minute investigation as to the preceding events and the chronological episodes which transpired during the peregrinations of the Zanks family.

There is little doubt that Fluckiger acted as a constable throughout and Ahnert assisted him as such, as is shown by the reports made by Ahnert. Otherwise, Ahnert might be excused if he believed Fluckiger was a deputy sheriff de jure, since the general rule is that the acts of a de facto officer are valid as to third persons and the public until his title to office is adjudged insufficient, and the officer's authority may not be collaterally attacked. 43 Am. Jur. 241, § 495. Even though he fails to give a bond, he may be a de facto officer. Id., 234, § 483. But it seems clear Fluckiger acted as, and was assisted by Ahnert as, an Ellington constable, so that it cannot be found that Ahnert was misled.

As we analyze the facts, then, there appears to be no known offense, at the time of the arrest, upon which the defendants could lawfully act. There had been no speedy information of an offense, and apparently the defendants were quite premature in their actions, as was the case in *Price* v. *Tehan,* 84 Conn. 164, where a Waterbury policeman arrested the plaintiff without a warrant and the court held there was no offense. See also *Perry* v. *Johnson,* 37 Conn. 32. Where a complaint was addressed to one justice of the peace and the warrant for arrest signed by another justice of the peace, it was held that the warrant served by a constable was void and the constable was liable in trespass and false imprisonment, since he was not justified in arresting the plaintiff without a warrant under the statute permitting such an arrest "upon the speedy

information of others." Id., 35. The court said: "[I]t is important in the use of all criminal forms of proceeding, the execution of which involves the liberty of the citizen, that the greatest practicable strictness and regularity should be observed." It said, further, that to hold the warrant valid "would be a departure from this wholesome principle, and introduce an inexcusable laxity, and an unfortunate innovation in the practice in this state."

It does not appear that there is any theory of "fresh pursuit" in Connecticut to justify an arrest of this nature. The statute defines and prescribes the limitation upon peace officers in making arrests without a warrant for any offense, and an arrest except as authorized is illegal. *Sims* v. *Smith,* 115 Conn. 279, 284. "The speedy information from others which justifies an arrest is information that the person arrested was guilty of a crime or at least implicated in it." *State* v. *Carroll,* 131 Conn. 224, 230.

The present case presents perplexing difficulties, but it is not one of first impression. Similar problems have occurred in making arrests, and on a former occasion our Supreme Court has said: "The case is not without difficulties, and the result may appear harsh from the defendant's viewpoint, but we can only apply the statute. It restricts the right of a police officer to arrest. . . . [I]t is pointed out that the purpose of the close restriction upon arrests without warrants is to protect the liberty of the innocent. We cannot say that the legislature adopted a wrong public policy when it weighed that liberty against the possibility that some guilty person might escape." *State* v. *Carroll,* supra, 231. In addition, an unwarranted arrest violates one's fundamental rights. "No person shall be arrested, detained or punished, except in cases clearly warranted by law." Conn. Const. art. I § 10.

The court need not review the various elements of injuries and damages. The plaintiff had a doctor's bill of $5, lost no time from work and was released immediately; from the evidence, it was not shown that he suffered in reputation because of the episode. From a review of the whole case, it cannot be found by a fair preponderance of the evidence that he has sustained his burden of proof as to the loss of personal property. The demonstration and evidence are not clear upon this point.

The issues are found, and judgment may enter, for the plaintiff to recover of the defendants $500 damages.