**Michael Everett STREET, Appellant,**

v.

**P. G. County Police Detective CHERBA; P. G. County Police Detective Robert Derfler, Sex Squad, Appellees.**

**No. 80–6611.**

United States Court of Appeals, Fourth Circuit.

Argued June 4, 1981.

Decided Oct. 1, 1981.

Manuel A. Palau, Beltsville, Md. (Dunn & Emig, P. A., Beltsville, Md., on brief), for appellant.

Michael O. Connaughton, Deputy County Atty., Upper Marlboro, Md. (Robert B. Ostrom, County Atty., Alan E. D'Appolito, Associate County Atty., Upper Marlboro, Md., on brief), for appellees.

Before WINTER, Chief Judge, HAYNSWORTH, Senior Circuit Judge, and PHILLIPS, Circuit Judge.

HAYNSWORTH, Senior Circuit Judge:

After having been convicted upon a plea of guilty of rape in Prince George's County, Maryland, the plaintiff filed this § 1983 (42 U.S.C. § 1983) action against the two Maryland police detectives who had arrested him in Fort Lesley J. McNair, a federal enclave in the District of Columbia. He claims his arrest and subsequent transportation to Maryland without authorization by the District of Columbia Superior Court was in violation of his federally protected rights. A United States Magistrate in Maryland found that his federally protected rights, indeed, had been violated, but he found that the defendants had established their good faith in acting as they had, and judgment was entered for the defendants. We agree.

I.

The day after the rape of a woman in Prince George's County, Maryland, a valid Maryland warrant was obtained for the arrest of the plaintiff, who had been a resident of Maryland but who was then in the Army stationed at Fort Lesley J. McNair. That evening the detectives went to Fort McNair where they consulted Major Morris, the officer responsible for post security, as they had been instructed to do by their superiors. Major Morris then telephoned a Judge Advocate General officer, after which he informed the two detectives that they might arrest the plaintiff on the Fort and take him from there to Maryland.

The plaintiff was arrested by the two detectives in the presence of Major Morris in a lunchroom on the Fort, from which he was taken in handcuffs to the Fort's military police headquarters. While at the military police headquarters, the detectives mentioned extradition to the plaintiff. He had been given *Miranda* warnings at the time of his arrest, but he was not informed of what rights he would have in an extradition proceeding. He was told that he would be detained by the military police pending completion of the extradition process unless he agreed to accompany the detectives back to Maryland. The plaintiff agreed, saying he wished to go back to Maryland to get the matter cleared up.

On appeal, the defendants make no contention about the findings of the unlawfulness of the arrest and the invalidity of the extradition waiver, or that each was a transgression of federally protected rights. They support the finding of their good faith.

## II.

The plaintiff first contends that in a § 1983 action police officers are entitled only to defenses analogous to those available at common law, and that good faith was no defense to a claim of unlawful arrest or illegal extradition. The argument is unpersuasive, for it is well-established that a police officer is entitled to qualified immunity from an assessment of damages against him if he acted with a reasonable and good faith belief that he had acted lawfully. *See, e. g., Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). We and other circuits have indicated that qualified immunity may be asserted by police officers in § 1983 actions claiming Fourth Amendment violations, *see, e. g., Hill v. Rowland,* 474 F.2d 1374 (4th Cir. 1973); *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 456 F.2d 1339 (2d Cir. 1972), or transportation of the plaintiff without complying with the extradition laws, *see, e. g., Wirth v. Surles,* 562 F.2d 319 (4th Cir. 1977), *cert. denied,* 435 U.S. 933, 98 S.Ct. 1509, 55 L.Ed.2d 531 (1978) (dicta). It is far too late in the day to argue that qualified immunity is not a defense available to these defendants.

### A.

Whether or not the defense was established in this case is a closer question.

Generally, an arrest warrant issued in one state may not be lawfully executed in another.[1] Maryland has authorized the governing bodies of its political subdivisions to empower police officials to act lawfully outside of Maryland,[2] though one would suppose that any such authorization, if it existed, could not enlarge the reach of a Maryland arrest warrant. It is clear, however, that Major Morris, informed by the detectives of their investigation and the issuance of the Maryland arrest warrant, could have arrested the plaintiff lawfully. He lawfully could have authorized one of his military policemen to do it.[3] Though we may assume that Major Morris did not have the power to authorize or direct the Maryland detectives to arrest the plaintiff on the Fort, it is surely unclear why their act, under his direction and in his presence, was not his act. At the very least, however, we cannot say that the detectives did not have a good faith belief that they acted properly when, in the strange environment of a federal enclave, they did what the officer in charge of base security, after consultation with a lawyer, had told them they could do.[4]

Militating against their entertainment of a subjective good faith belief in the lawfulness of their arrest was testimony that just after they crossed the line between the District of Columbia and Maryland one of the detectives turned to the plaintiff and said, "Now you are under arrest," and a contention at trial that no arrest was really effected until they had entered Maryland. Apparently this was a trial tactic, which was properly knocked down by the Magistrate, who unhesitatingly found that the arrest had been effected in the lunchroom on the base. While that claim points in the direction of subjective doubt about the validity of what they had done while at Fort McNair, it does not make the Magistrate's overall finding of subjective good faith clearly erroneous.

---

1. Restatement (Second) of Torts § 129 (1965).

2. Md.Ann.Code Art. 27, § 602B. The Maryland Code also authorizes police officers from other states, who enter Maryland in fresh pursuit of a person, believed to have committed a felony, to arrest that person. *Id.* at § 595. "Fresh pursuit," under the Maryland Code, does "not necessarily imply instant pursuit, but pursuit without unreasonable delay." *Id.* at § 599.

3. Restatement (Second) of Torts § 121 (1965).

4. This is not a case in which the factfinder was entirely dependent upon the credibility of the defendants testifying in their own behalf. Major Morris was a witness who fully substantiated the fact that the police detectives did consult him, that he sought the advice of a military lawyer and then told the defendants that they could arrest the plaintiff and take him back to Maryland.

The defendants testified that they did not know what extradition procedures would be required to remove the plaintiff from Fort McNair to Maryland. The Uniform Code of Military Justice relegates that to regulations adopted by the Secretary.[5] 32 C.F.R. § 503.2(b) provides, in effect, that if the demanding state is not the one in which the military person is located, the demanding state must comply with the extradition procedures of the asylum state. Again, in the strange environment of a federal enclave it should be understandable that the detectives did not know what procedures would be required. They had been told by Major Morris, upon the advice of an Army lawyer, that they might simply take Street back to Maryland, and that might have been construed as the effective consent of the asylum jurisdiction. It is clear, however, that the defendants thought that some waiver of an extradition right was essential or would be of assistance, for they sought such a waiver and informed Street that without it he would be detained by the military police until the extradition procedure could be executed. If the waiver they obtained was defective because of their failure to explain to Street the rights he would have in the course of an extradition proceeding, the waiver was, nevertheless, entirely uncoerced. Street expressed his wish to be taken back to Maryland to get the matter cleared up.

Under all of these circumstances, we think the Magistrate's finding of subjective good faith in taking the plaintiff back to Maryland without formal extradition was not clearly erroneous.

### III.

For the same general reasons we conclude that the defendants' subjective good faith in their belief that they were acting lawfully was not unreasonably held. They had been instructed by their superiors to consult the proper military authority at the Fort. They did that, and all that they did after that was with his permission and approval. Through Major Morris they had the

---

**5.** 10 U.S.C.A. § 814, Art. 14(a).

advice of a military lawyer. And, of course, they had Street's stated wish to be transported back to Maryland. A belief that otherwise might have been unreasonable is made quite reasonable when founded upon the permission and approval of the proper military official given upon military legal advice and, as to the transportation, the expressed wish of the plaintiff.

For these reasons, after consideration of the facts and circumstances, we conclude that the Magistrate properly concluded that the defendants were entitled to a qualified immunity from an assessment of damages against them.

*AFFIRMED.*