**Alexander L. KATONA, Plaintiff,**

v.

**The CITY OF CHEYENNE and Pat's Towing, Defendants.**

No. C87–0408–B.

United States District Court, D. Wyoming.

April 28, 1988.

George Santini, Charles E. Graves & Associates, Cheyenne, Wyo., for plaintiff.

Jane Juve, Thomas G. Gorman, Hirst & Applegate, Cheyenne, Wyo., for City of Cheyenne.

Peter K. Michael, Cheyenne, Wyo., for Pat's Towing.

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT

BRIMMER, Chief Judge.

THIS MATTER came before the Court on defendants' motions for summary judgment pursuant to Fed.R.Civ.P. 56(b). The Court, having heard the arguments of counsel, having reviewed the pleadings, and being fully advised in the premises, FINDS and ORDERS as follows:

This action resulted from the plaintiff's arrest on a traffic violation and incarceration for twenty-seven days without an initial appearance. At the time of his arrest, the plaintiff's car was impounded by the police and towed to a private storage lot. There the car was broken into and many of the plaintiff's belongings were stolen. The towing company later foreclosed on a storage lien and possessed the plaintiff's car.

The plaintiff, Alexander Katona, asserts four claims for relief. He alleges that he was deprived of liberty without due process of law by being held in custody for an extended period of time without a hearing by a magistrate; that the City of Cheyenne's ordinance requiring nonresidents to post a bond for traffic offenses denies equal protection and violates the right to interstate travel guaranteed by the privileges and immunities clause; that he was deprived of property without due process of law; and that the defendants breached their duty of care by failing to safeguard his property.

The defendants, the City of Cheyenne, Wyoming (the "City") and Pat's Towing, now move for summary judgment. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Factual issues are material where the evidence and reasonable inferences therefrom might lead a jury to find for the resisting party. *Carey v. United States Postal Serv.*, 812 F.2d 621, 623 (10th Cir.1987) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The facts underlying the allegations are as follows: At the time of his arrest, Mr. Katona was indigent and lived in his car. He drove from Fort Collins, Colorado to Cheyenne, Wyoming on December 3, 1986 to obtain medical treatment at the Veterans Administration Hospital in Cheyenne. That evening a Cheyenne police officer, Officer Ray Pennock, stopped Mr. Katona and cited him for careless driving and for driving with an expired license. Because Mr. Katona was a nonresident, the officer,

pursuant to city policy, demanded a cash appearance bond. Mr. Katona was unable to post a $35.00 bond and was arrested. Officer Pennock decided to have Mr. Katona's car towed away.

Factual disputes emerge at this point. Officer Pennock contends that he decided to have the car towed because there were no public parking places where the automobile could be left safely. He could not allow Mr. Katona to move the car without a valid driver's license. The officer did not want to move the car himself and thus leave Mr. Katona unattended in the police cruiser. Mr. Katona contends that two officers were on the scene and that his car could have been moved to some other location in the area. In either event, it is undisputed that, pursuant to City ordinances, a police dispatcher called a towing company to the scene and that Pat's Towing eventually towed the plaintiff's car to a storage lot. Mr. Katona was not told where his car was taken or how he could retrieve it.

Mr. Katona was taken to the Laramie County jail and was processed by 8:00 P.M. on December 3, 1986. Municipal court practice is to conduct initial appearances only on Monday, Wednesday and Friday. Mr. Katona was told that his initial appearance and arraignment would be conducted on December 5, 1986 at 1:30 P.M. A criminal complaint was sworn. The complaint was reviewed the next day by the municipal court commissioner, who issued an arrest warrant without consulting a judge or a magistrate.

After being jailed for nearly 42 hours, Mr. Katona was taken to his initial appearance on December 5, 1986. Officer Roger Lawson transported Mr. Katona and two other prisoners to the municipal court. The prisoners were handcuffed together. Outside the building, Mr. Katona asked what would happen if he tried to escape. Officer Lawson said he would shoot Mr. Katona. What happened next is disputed.

Mr. Katona claims that he "stuck his left foot out," in a mock escape attempt. He claims that Officer Lawson then threw him against the police car and repeatedly hit him in the stomach. Officer Lawson contends that Mr. Katona actually tried to run, pulling two prisoners along with him. The officer claims that he tried to control Mr. Katona, who attempted to strike back. The officer hit Mr. Katona in the stomach and forced him and the other prisoners back into the patrol car.

Officer Lawson returned the prisoners to the county jail. He left Mr. Katona in the jail and took the other prisoners to court for an initial appearance. The officer later drew up a complaint charging Mr. Katona with interfering with a police officer and with disturbing the peace. The municipal court judge reset Mr. Katona's initial appearance for Monday, December 8, 1986, the next business day.

On the morning of December 8, the jailers told Mr. Katona that his initial appearance was scheduled for 1:30 that afternoon. Mr. Katona showered. Stepping out of the shower, he was told that he had to appear in court immediately. Mr. Katona requested a coat for protection from the cold. The request was denied. Officer Lawson testified that there was no reason to deny the request other than that the jailers had not given Mr. Katona a coat. Mr. Katona refused to leave the jail without a coat.

The municipal court judge entered a not guilty plea on Mr. Katona's behalf, appointed an attorney to represent him, and scheduled a bench trial for January 15, 1987. Twenty-seven days after his arrest, Mr. Katona was released on his own recognizance on December 30, 1986. Mr. Katona was not given an initial appearance or arraigned during this time, nor was his arrest warrant reviewed by a magistrate.

After a trial to the court, Mr. Katona was found guilty of all four charges against him. A fine and a jail sentence was imposed. Both were suspended.

Mr. Katona contacted Pat's Towing in February 1987. The company refused to release the car, because Mr. Katona did not have a valid driver's license and was unable to pay the towing and storage fee. Mr. Katona returned with a lawyer on April 29 to retrieve his belongings and discovered that someone had broken into his car and

stolen $2,500.00–$3,500.00 in clothing and other items.

Pat's Towing foreclosed on its storage lien on September 9, 1987, and purchased Mr. Katona's car for $800.00, the cost of towing and storage. Pat's Towing now has title to Mr. Katona's automobile. The car has not been resold.

This action commenced on December 3, 1987. To reiterate, Mr. Katona alleges that he was deprived of liberty and property without due process of law, that he was denied equal protection of the law, and that the defendants negligently failed to safeguard his property.

### 1. *Deprivation of Liberty*

■ Mr. Katona's first cause of action alleges that his incarceration for twenty-seven days without a hearing deprived him of liberty without due process of law. The Fourth Amendment requires a judicial determination of probable cause as a prerequisite to an extended restraint of liberty following arrest. *Gerstein v. Pugh*, 420 U.S. 103, 114, 95 S.Ct. 854, 863, 43 L.Ed.2d 54 (1975). *See also*, Wyo.R.Crim.P.J.P.Ct. 5(a) ("An officer making an arrest ... without a warrant shall take the arrested person forthwith before the justice."). Violations of this requirement are redressable under 42 U.S.C. Sec. 1983. *Rex v. Teeples*, 753 F.2d 840, 842 (10th Cir.1985).

■ The undisputed facts show that Mr. Katona was jailed for twenty-seven days without a judicial determination of probable cause. Review by the court commissioner is insufficient. First, the commissioner is not a judicial officer. The Wyoming Rules of Criminal Procedure for Justice of the Peace and Municipal Courts define a justice as a "justice of the peace, and, in municipal courts, police justice." Wyo.R.Crim.P.J.Ct. 1(b)(1). Second, the municipal court commissioner lacks authority to issue arrest warrants. Procedures for issuing arrest warrants are governed by rules adopted by the Supreme Court of Wyoming. Wyo.Stat. Sec. 7–8–103(b) (1977). Those rules require the signature of a justice on arrest warrants issued by justice of the peace courts. Wyo.R.Crim.P.

J.Ct. 4(a), (b)(1). The municipal court commissioner is not a justice and hence an arrest warrant issued under his authority is a nullity. Third, there is no apparent constitutional or statutory basis for the office of municipal court commissioner. Exclusive power to establish and supervise lower state courts is vested in the legislature and the Supreme Court of Wyoming. Wyo. Constitution Art. V, Sections 1, 2. The office of municipal court commissioner, in contrast, is created by city ordinance. *Code of Ordinances for the City of Cheyenne, Wyoming* Section 15–7. Consequently, any probable cause determination made by the municipal court commissioner was infirm. *Gerstein v. Pugh*, 420 U.S. at 125, 95 S.Ct. at 868 (probable cause determination "must be made by a judicial officer.").

The City urges that Mr. Katona waived his rights by refusing to appear for an initial appearance and arraignment. This overlooks the substantial factual dispute concerning the reasons why Mr. Katona did not appear. A jury believing Mr. Katona's version of the events could reasonably conclude that Mr. Katona failed to appear as a result of arbitrary police action. The argument also ignores the legal principle that an adversarial determination of probable cause is not constitutionally required. *Gerstein v. Pugh*, 420 U.S. at 123, 95 S.Ct. at 867. Mr. Katona's presence was not constitutionally required to proceed with a probable cause hearing. Regardless of the method used to establish probable cause, the procedure adopted must provide a fair and reliable determination of probable cause "and this determination must be made by a judicial officer either before or *promptly* after arrest." *Gerstein v. Pugh*, 420 U.S. at 125, 98 S.Ct. at 869. (Emphasis added).

The City next urges that Mr. Katona waived his right to an arraignment by proceeding to trial on the charges against him. Even if this is correct, by waiving arraignment Mr. Katona did not necessarily waive the right to a pretrial finding of probable cause.

Mr. Katona was unharmed, the City finally contends, by the failure to bring his case promptly before a judicial officer. The municipal judge entered not guilty pleas for Mr. Katona, appointed counsel to serve on his behalf, and set bond. This does not obviate the need for a probable cause determination. "The consequences of prolonged detention," the United States Supreme Court observed, "may be more serious than the interference occasioned by arrest. Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships. Even pretrial release may be accompanied by burdensome conditions that effect a significant restraint of liberty." *Gerstein v. Pugh*, 420 U.S. at 114, 98 S.Ct. at 863 (citations omitted). Entering a plea of not guilty and setting a trial date does not alter the possibility that a prompt determination of probable cause favoring Mr. Katona might have eliminated the need for a trial.

Issues of material fact remain for trial on this question. Further, the City failed to show that it is entitled to judgment as a matter of law. Its motion for summary judgment on Mr. Katona's first cause of action must be denied.

■ A different result obtains with respect to Pat's Towing. The undisputed facts show that the towing company had no judicial role and that it played no part in depriving Mr. Katona of a prompt probable cause hearing. No connection thus exists between its conduct and the alleged deprivation of liberty without due process of law. Summary judgment in its favor is appropriate.

### 2. *Equal Protection Violation*

■ Mr. Katona was jailed pursuant to a municipal policy requiring all nonresidents of Laramie County, Wyoming to post an appearance bond for traffic offenses. The policy applies equally to Wyoming residents who do not live in Laramie County as well as to residents of other states. Those who can establish residency in the County need not post a bond. Length of time is not determinative of residency. One merely must show bona fide residence in the

County. Memorandum in Support of Defendant City of Cheyenne's Motion for Summary Judgment, Ex. B. Mr. Katona challenges the validity of the policy, urging that:

... adopting a custom, policy or official usage of allowing only local residents to be released on their own recognizance pending trial for bailable misdemeanor offenses and applying that policy to justify the extended detention of Plaintiff (deprived) him of his constitutionally protected rights to equal protection under law based solely on his status as an indigent, and further (deprived) him of his constitutional privileges and immunities to freedom of interstate travel as a result of his status as a nonresident....

Complaint, para. 24.

The legal theory asserted in this claim is unclear. A careful reading of the allegation reveals two basic claims. Mr. Katona appears to allege that the defendants violated the equal protection guarantees of the Fourteenth Amendment, first, by impermissibly distinguishing between residents and nonresidents, second, by impairing the right to interstate travel, and, third, by denying bail to indigents. The second claim arguably asserts a violation of the Privileges and Immunities Clause of Article IV, Section 2.

Turning to the equal protection claims, the first question is whether or not the challenged policy disadvantages a suspect class or impinges upon a fundamental right. *San Antonio Indep. School Dist. v. Rodriguez*, 411 U.S. 1, 17, 93 S.Ct. 1278, 1288, 36 L.Ed.2d 16 (1973). The right of interstate travel is a basic constitutional freedom. *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 254–55, 94 S.Ct. 1076, 1080, 39 L.Ed.2d 306 (1974). Classifications penalizing the exercise of that right must be justified by a compelling state interest. *Id.* at 258, 94 S.Ct. at 1082. Not all residency requirements, however, violate the right to interstate travel. *Shapiro v. Thompson*, 394 U.S. 618, 638 n. 21, 89 S.Ct. 1322, 1333 n. 21, 22 L.Ed.2d 600 (1969). The essential question is whether the classification "penalizes indigents for exercising their right to migrate to and

settle in (the) State." *Memorial Hospital v. Maricopa County,* 415 U.S. at 261, 94 S.Ct. at 1084.

The classification at issue in this case does not establish a durational residency requirement. Indigent persons must only establish that they are bona fide residents of Laramie County. Accordingly, the policy does not penalize indigents for migrating to and settling in Wyoming.

█ Constitutional prohibitions against excessive bail are integral to a concept of ordered liberty and are binding upon the states under the Fourteenth Amendment. *Meechaicum v. Fountain,* 696 F.2d 790, 791 (10th Cir.1983) (per curiam). Excessive bail or denial of bail violates the Equal Protection Clause. *Pugh v. Rainwater,* 572 F.2d 1053, 1057 (5th Cir.1978) (en banc). In this case, Mr. Katona had the option of posting a $35.00 bond to secure his release. He contends that bond was set too high and thus constituted excessive bail. *Meechaicum v. Fountain,* 696 F.2d at 791.

█ Bail is excessive when set at an amount higher than necessary to ensure appearance at trial. *Id.* The validity of restrictions upon bail turns on whether the restrictions are "rational, reasonable, and nondiscriminatory." *Id.* at 792. The $35.00 bond requirement in this case was reasonably required to secure Mr. Katona's appearance at trial. The hardship imposed on Mr. Katona must be balanced against the "compelling interest in assuring the presence at trial of persons charged with crime." *Pugh v. Rainwater,* 572 F.2d at 1056. The Court therefore concludes that the bond required from Mr. Katona was reasonable.

█ Mr. Katona finally contends that the bond requirement invidiously discriminates against indigents. The Supreme Court has consistently refused to recognize indigency as a suspect class requiring strict scrutiny. *San Antonio Indep. School Dist. v. Rodriguez,* 411 U.S. at 29, 93 S.Ct. at 1294; *Maher v. Roe,* 432 U.S. 464, 470–471, 97 S.Ct. 2376, 2380–81, 53 L.Ed.2d 484 (1977). Therefore, the question is whether the bond requirement rationally furthers a legitimate policy. *San Antonio Indep. School v. Rodriguez,* 411 U.S. at 17, 93 S.Ct. at 1288. The purpose of the bond requirement is to ensure that nonresidents pay their fines or appear at trial. The bond requirement rationally and reasonably furthers that purpose. The policy therefore does not constitute invidious discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment.

█ Nor does the policy violate the Privileges and Immunities Clause of Article IV, Section 2. First, Wyoming residents who do not live in Laramie County are treated in the same way as residents of other states. Moreover, the requirement is consistent with the policies embodied in the Clause.

The Privileges and Immunities Clause of Article IV, Section 2 establishes a "norm of comity" guaranteeing equality of treatment thereby preventing States from imposing unreasonable burdens on citizens of other States. *Austin v. New Hampshire,* 420 U.S. 656, 660, 95 S.Ct. 1191, 1194, 43 L.Ed.2d 530 (1975); *Baldwin v. Montana Fish and Game Comm'n,* 436 U.S. 371, 383, 98 S.Ct. 1852, 1860, 56 L.Ed.2d 354 (1978). The Privileges and Immunities Clause, however, protects only "those 'privileges' and 'immunities' bearing upon the vitality of the Nation as a single entity." *Baldwin,* 436 U.S. at 383, 98 S.Ct. at 1860. Nothing in the bond policy impedes interstate commerce, frustrates the exercise of federal power, or interferes with a nonresident's right to pursue a livelihood in Wyoming. *Id.* Accordingly, the policy passes scrutiny under the Privileges and Immunities Clause.

Finally, Pat's Towing was not involved in promulgating the challenged policy. Even assuming that the policy abridged constitutional guarantees of equal protection or of the privileges and immunities of citizenship, the towing company is unconnected to the violation. As a result, both defendants are entitled to judgment as a matter of law on the claims included in Mr. Katona's second cause of action, and their motions for summary must be granted.

### 3. *Deprivation of Property Without Due Process*

Mr. Katona's third cause of action alleges that he was deprived of property without due process of law. After his arrest, Mr. Katona's car was towed by Pat's Towing company to a private storage lot, pursuant to City ordinance Section 28–72. The ordinance requires written notice of the fact that the vehicle has been towed, the reason why it was removed from the street, and the place to which it was towed. City Ordinance Section 28–72(c). Mr. Katona contends that the City did not tell him where his car was being taken or how he could regain possession of it. The Court must assume the truth of this assertion on a motion for summary judgment. Mr. Katona had no opportunity before or after the car was towed to challenge the City's action. Pat's Towing company later purchased the car for towing and storage costs.

The City argues for summary judgment on the grounds that due process does not require predeprivation notice and hearing before removing a car from city streets. It also urges that the removal was justified. Neither argument compels summary judgment.

■ Loss of the use of a private car deprives the owner of a property interest that may be taken only in accordance with the Due Process Clause of the Fourteenth Amendment. *Stypmann v. City and County of San Francisco*, 557 F.2d 1338, 1342 (9th Cir.1977) (cited with approval in *Weinrauch v. Park City*, 751 F.2d 357 (10th Cir.1984)). A municipality need not provide a hearing before impounding a private automobile. *Weinrauch v. Park City*, 751 F.2d 357, 360 (10th Cir.1984). Some form of post-deprivation remedy, however, must be provided at a meaningful time. *Stypmann v. City and County of San Francisco*, 557 F.2d at 1343–44. *See also Weinrauch v. Park City*, 751 F.2d at 359, 360 (recognizing that some form of hearing is required).

■ The facts of this case reveal a palpable due process violation by the City. It is undisputed that the City ordered Mr. Katona's car towed away to a storage lot. Even if that action was justified, the City did not give Mr. Katona any opportunity before or after the towing to dispute the towing or the amount of the costs he was required to pay before recovering the vehicle. The City did not even tell Mr. Katona where his car was being taken or how he could regain possession of it. The towing company later foreclosed a lien on and obtained title to Mr. Katona's car. This transformed a temporary deprivation into a permanent taking. *Coleman v. Turpen*, 697 F.2d 1341, 1345 (10th Cir.1982) (per curiam). Ample evidence exists to support a jury verdict against the City on this claim. Accordingly, its motion for summary judgment must be denied. *Windon Third Oil and Gas Drilling Partnership v. Federal Deposit Ins. Corp.*, 805 F.2d 342, 346 (10th Cir.1986).

■ Pat's Towing company argues that it cannot be held liable for the City's violation of Mr. Katona's due process rights. The towing company concedes that it acted under color of state law but asserts that no link exists between its action and the failure to give Mr. Katona a hearing. Because only the City could provide a hearing, Pat's Towing argues that it is entitled to summary judgment on this claim.

Several federal district court decisions support the towing company's position. Each of these cases is factually distinguishable from this case in a critical respect.

The plaintiff in *Mays v. Scranton City Police Dep't*, 503 F.Supp. 1255 (M.D. Pa. 1980), for example, challenged a police order impounding his car. As in this case, a towing company towed the plaintiff's car to a private lot. The court held that the defendant municipality violated the Due Process Clause of the Fourteenth Amendment by failing to provide a hearing at some meaningful time. *Id.* at 1256. The court also held, however, that the towing company, although a state actor, was not liable for the deprivation. The court reasoned that the towing company could not provide the required constitutional remedy and thus was unconnected to the constitutional

violation. Id. at 1264. *Accord, Huemmer v. Mayor and City Council of Ocean City,* 474 F.Supp. 704 (D.Md.1979); *Watters v. Parrish,* 402 F.Supp. 696 (W.D.Va.1975).

In each of these cases, however, the car owner eventually recovered the automobile. In *Mays,* the towing company voluntarily returned the car to the plaintiff. *Mays,* 503 F.Supp. at 1258 n. 12. In *Huemmer* and *Watters,* the car owner paid the towing charges and recovered possession. *Huemmer,* 474 F.Supp. at 706; *Watters,* 402 F.Supp. at 698. In this case, however, Pat's Towing foreclosed its lien on the car and now has title to it. Mr. Katona has virtually no chance of recovering the vehicle. This fact brings the instant case squarely within the holding of *Coleman v. Turpen,* 697 F.2d 1341, 1345 (10th Cir.1982) (per curiam).

In *Coleman,* a county sheriff seized a truck and camper belonging to the plaintiff. The sheriff hired a towing company to tow and store the truck. Without notifying the plaintiff, the towing company sold the truck to satisfy a $600.00 storage bill. *Id.* at 1343. The plaintiff brought an action under 42 U.S.C. Section 1983 alleging, *inter alia,* that the sheriff and the towing company deprived him of property without due process of law. The district court dismissed the towing company, reasoning that it did not act under color of state law. *Id.* The Tenth Circuit reversed.

The Court concluded that the towing company participated with state officials in seizing the truck and thus acted under color of state law. *Id.* at 1345. The Court also pointed out that the sale of the truck by the towing company "was an integral part of the deprivation: it transformed a temporary seizure into a permanent divestment." *Id.* Accordingly, the sale deprived the plaintiff of property without due process. *Id.*

In this case, Pat's Towing admits that it acted under color of state law. The remaining question is whether its actions constituted "an integral part of the deprivation." The actions of Pat's Towing go well beyond simply towing and storing Mr. Katona's car. The towing company foreclosed on a mechanic's lien and acquired title to Mr. Katona's car. Pat's Towing now has the right to sell Mr. Katona's car. Wyo. Stat. Section 29–7–105(c). Any good faith purchaser takes the car free of Mr. Katona's claims. *Id.* Section 29–7–105(e). The towing company itself argues that Mr. Katona has no right to recover the car. In these circumstances, the reasoning of *Coleman* controls. For purposes of summary judgment, the Court finds that by asserting a lien on and taking title to Mr. Katona's car, Pat's Towing played an integral part in depriving Mr. Katona of due process.

The towing company's motion for summary judgment on the third cause of action must be denied. The Court accordingly retains jurisdiction over the fourth cause of action.

■ Mr. Katona's fourth claim for relief alleges that property was stolen from Mr. Katona's car while in storage and that the City and Pat's Towing failed to exercise due care in safeguarding Mr. Katona's car while it was in their possession. The City argues that the towing company had exclusive control over the car and that the City cannot be held liable for any damage incurred by the towing company's failure to exercise due care.

The evidence shows that the City directed Pat's Towing to tow and store Mr. Katona's car. Whether the City possessed the right to control the manner in which the car was stored is a question of fact. A jury finding that the City had the right to control Pat's Towing could reasonably conclude that Pat's Towing was an agent of the City, which could therefore be held liable for its agent's negligence. *See, e.g., Holliday v. Bannister,* 741 P.2d 89, 94–95 (Wyo.1987) (negligence of servant may be imputed to principal).

The City has not asserted the Wyoming Governmental Claims Act, Wyo.Stat. Sections 1–39–101 to –120 (Supp.1987), as a bar to Mr. Katona's fourth cause of action. The record is insufficient to determine whether the provisions of the Wyoming Governmental Claims Act, Sections 1–39–104, –113 (Supp.1987), preclude Mr. Katona's fourth claim against the City. Be-

cause the grounds advanced by the City raise material issues of fact, the City's motion for summary judgment will be denied. It is therefore

ORDERED and ADJUDGED that defendant City of Cheyenne's motion for summary judgment on the plaintiff's second cause of action be, and the same hereby is, granted. The City of Cheyenne's motion for summary judgment on the plaintiff's first, third and fourth causes of action is hereby denied. It is further

ORDERED and ADJUDGED that the motion of defendant Pat's Towing for summary judgment on the plaintiff's first and second causes of action be, and the same hereby is, granted. Said defendant's motion for summary judgment on the plaintiff's third and fourth causes of action is denied. To promote the interests of economical and efficient appellate review, to preserve the parties' right to appeal, and to avoid confusion concerning the timeliness of any appeal, entry of judgment will be postponed pending the outcome at trial. Fed.R.Civ.P. 54(b).