**Dennis Milo VAN HORN,**
**Appellant (Defendant),**

v.

**The STATE of Wyoming,**
**Appellee (Plaintiff).**

**No. 90–131.**

Supreme Court of Wyoming.

Dec. 14, 1990.

Leonard D. Munker, State Public Defender, Steven E. Weerts, Senior Asst. Public Defender, and David Gosar, Appellate Counsel, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia L. Hackl, Deputy Atty. Gen., and Mary B. Guthrie, Senior Asst. Atty. Gen., for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

URBIGKIT, Chief Justice.

■ Appellant argues a municipal peace officer may not execute a municipal bench (arrest) warrant outside the boundaries of that municipality. We agree and reverse appellant's conviction for interference with a municipal peace officer.

Appellant, Dennis Milo Van Horn, was found guilty of interference with a peace officer and sentenced to fifteen days in the Crook County, Wyoming jail and ordered to pay $850 for the cost of his court-appointed attorney and $50 to the Victims of Crime Compensation Fund.[1]

The parties stipulate that officers of Moorcroft's municipal police force observed an automobile driving erratically within the municipal limits of Moorcroft and activated their patrol car's overhead lights; the automobile was stopped outside the municipal limits; after they made the stop, the officers identified appellant, who was a *passenger* in the automobile, and arrested him outside the Moorcroft municipal limits; and appellant's arrest was based on an outstanding municipal bench warrant signed by the Moorcroft municipal judge. Appellant's conduct during this arrest led to the misdemeanor charge for interference with a peace officer. All of this is based on a July 8, 1988 charge of battery as the only other offense with which appellant had been involved. From what is provided in this record, it appears that on July 21, 1988, appellant, as the result of the battery offense, had been sentenced to $276 restitution, $120 fine and six months unsupervised probation. The bench warrant followed in December 1988 reflecting a remaining balance of $96 unpaid on the restitution and fine. The next event was this occurrence in May 1989. At the scene, appellant's brother gave appellant the necessary money to settle the claim balance which was tendered to the arresting peace officer who stated that appellant had to be arrested, taken to the police station and

---

1. "A person commits a misdemeanor punishable by imprisonment for not more than one (1) year, a fine of not more than one thousand dollars ($1,000.00), or both, if he knowingly obstructs, impedes or interferes with or resists arrest by a peace officer while engaged in the lawful performance of his official duties." W.S. 6-5-204(a).

The propriety of the charge and method of assessment for the indigent to pay the cost of court appointed counsel is not presented as an appellate issue. *See* W.S. 7-6-106. The transcript reflected that the appellant was required to "reimburse the county and the state attorney's fees in the amount of $850."

However, the judgment and sentence provided:

2. The defendant shall reimburse the County and State in the amount of $850.00 for the cost of his court-appointed attorney to be paid to the Clerk of District Court, P.O. Box 904, Sundance, WY 82729.

No basis for the computed amount was included in this record.

booked in before he could tender that balance for satisfaction of the previous fine. The warrant itself provided "Defendant is to be admitted to bail in the sum of $96." At the scene, appellant became overtly and admittedly upset about being arrested for the $96.

In his appeal, appellant asks: "Is a municipal police officer engaged in the lawful performance of his official duties when executing a municipal bench warrant outside the city limits?"[2]

Our standard of review requires us to conduct a plenary review of the choice, interpretation, construction, and application of the controlling legal precepts. *ANR Production Company v. Wyoming Oil and Gas Conservation Com'n.*, 800 P.2d 492 (Wyo.1990).

Appellant argues the Wyoming statutes and court rules do not authorize a municipal peace officer to arrest under a municipal bench warrant outside the municipal limits which is the entity by which the officer is employed. In short, appellant contends that he should not have been convicted for interference with a peace officer because the municipal police were outside their jurisdiction when they arrested him. He first argues that the jurisdiction of Wyoming municipal police to execute municipal bench warrants is limited to the municipal borders. He then argues that for a peace officer to be interfered with, the peace officer must first be engaged in the "lawful performance of his official duties." W.S. 6-5-204(a). Because the legislature and judiciary have limited the jurisdiction of municipal police to the municipal borders, an extraterritorial arrest cannot be considered "lawful performance." Thus, appellant contends, the Moorcroft municipal police were not engaged in the "lawful performance" of their official duties when they arrested him outside their jurisdiction. We agree.

■ The legislature and the judiciary[3] have delineated the jurisdiction of municipal judges and municipal peace officers. Pursuant to W.R.Cr.P.J.C. 4(a), municipal judges shall issue arrest warrants "to any officer authorized by law to execute it." Those "officers" authorized to execute arrest warrants are labeled "peace officers" under W.S. 7-2-101(a)(iv). Accordingly, "[a] peace officer may arrest a person when * * * [he] has a warrant commanding that the person be arrested * * *." W.S. 7-2-102(a)(i). Included within the statutory definition of "peace officers" are "[a]ny duly authorized member of a municipal police force * * *." W.S. 7-2-101(a)(iv)(B). In the case of municipal police executing municipal bench warrants, W.R.Cr.P.J.C. 4(c)(2) further provides that "[t]he warrant may be executed or the summons may be served at any place within their territorial jurisdictions when issued by municipal judges * * *."[4] Thus, read-

---

2. This appeal involves neither fresh pursuit, *State v. Tillman*, 208 Kan. 954, 494 P.2d 1178 (1972); *People v. Welfel*, 29 Misc.2d 62, 212 N.Y.S.2d 650 (1961); *cf. Appeal of Cowell*, 243 Pa.Super. 177, 364 A.2d 718 (1976); nor contention of a citizen's arrest when the officer acts without authority when beyond his jurisdiction, *Davis v. United States*, 409 F.2d 1095 (5th Cir. 1969); *State v. Crum*, 323 So.2d 673 (Fla.App. 1975); *Stevenson v. State*, 287 Md. 504, 413 A.2d 1340 (1980); *State v. Harp*, 13 Wash.App. 239, 534 P.2d 842 (1975); or even without any warrant, *Perry v. State*, 303 Ark. 100, 794 S.W.2d 141 (1990); Annotation, *Validity, In State Criminal Trial, of Arrest Without Warrant by Identified Peace Officer Outside of Jurisdiction, When Not in Fresh Pursuit*, 34 A.L.R.4th 328 (1984).

There is a separate subject that develops in cases of the officer's injury or a civil suit for false arrest where the arrest occurs outside of the municipal jurisdiction. *Street v. Cherba*,

662 F.2d 1037 (4th Cir.1981); *Drake v. Keeling*, 230 Iowa 1038, 299 N.W. 919 (1941); *Wilson v. Town of Mooresville*, 222 N.C. 283, 22 S.E.2d 907 (1942).

3. The Wyoming Supreme Court in accordance with the constitution, the statutes of the State of Wyoming, and under its plenary powers, has promulgated and adopted:

> * * * * * *
> Wyoming Rules of Criminal Procedure for Justice Courts[.]

W.R.Cr.P.J.C. at 263.

4. W.R.Cr.P.J.C. 4(c)(2) goes on to provide that the warrant may be executed "at any place within the State of Wyoming when issued by the justices of the peace." The legislature has also granted statewide jurisdiction to county and justice of the peace courts, but not to municipal courts. "A warrant or summons issued by any justice of the peace court or county court based

ing the statutes and rules together, municipal police must execute municipal arrest warrants within the "territorial jurisdiction" of the municipal judge who issued the warrant.

In response, the State argues our holding in *Roberts v. State*, 711 P.2d 1131 (Wyo. 1985) controls and, therefore, we should uphold appellant's conviction. We disagree. In *Roberts*, municipal police, relying on a warrant, arrested an individual *within the municipal limits*. We began our analysis, in *Roberts*, by stating that one of the statutory (official) duties of peace officers is to execute arrest warrants. We then reasoned that a peace officer is "lawfully performing his official duty when he makes an arrest even if it later appears that the arrest warrant is invalid. A person who resists such an arrest can be convicted under our resisting arrest statute." *Id.* at 1134.

The rationale of *Roberts* is that police officers—acting in good faith—should not be required to determine the validity of a bench warrant before fulfilling their statutory duty of executing it. Neither the holding nor the rationale behind *Roberts* is implicated in this case. This case does not. involve municipal peace officers making sometimes difficult judgment calls as to a particular warrant's validity. Rather, this case involves a clear line of demarcation— the jurisdiction of the municipal police force. Under the statutes and court rules, the municipal police force's authority to arrest individuals pursuant to municipal bench warrants simply does not extend beyond the municipal boundaries.[5] *Cf. Katona v. City of Cheyenne*, 686 F.Supp. 287, 291 (D.Wyo.1988) ("The municipal court commissioner is not a justice and hence an arrest warrant issued under his authority is a nullity.")

In result, the present Wyoming statutory and rule structure for the city officer en-

forcement of the municipal warrant retains confined arrest jurisdiction of the municipal peace officer to the long established historical common law rule. The rule is directly and explicitly stated with an extended history and application:

In the absence of statute, the power of a sheriff or officer is limited to his own county, and he cannot execute a writ out of his own county. Outside his county, his authority to make arrests is no greater than that of a private citizen.

5 Am.Jur.2d, *Arrest* § 19 at 710 (1962) (footnote omitted). The case of *Ex parte Crawford*, 148 Wash. 265, 268 P. 871 (1928) serves to provide the historical and since continued definition of the law.

It is elementary law that, in the absence of constitutional or statutory authority, a warrant of arrest cannot be lawfully executed by arresting the accused beyond the territorial jurisdiction of the justice or court issuing it. 1 Chitty's Criminal Law, 48; 1 Bishop's New Criminal Procedure (2d Ed.) p. 140.

*Id.* 268 P. at 872.

Annotation, *Territorial Extent of Power to Arrest Under a Warrant*, 61 A.L.R. 377, 377 (1929), which follows *Ex parte Crawford* in the volume, quotes 2 R.C.L. 469:

Generally speaking it may be said that "a public officer appointed as a conservator of the peace for a particular county or municipality ... has no official power to apprehend offenders beyond the boundaries of the county or district for which he has been appointed [whether he acts under color or of a warrant or without one]."

The annotation cites a history of cases commencing with *Chorley's Case*, 1 Salk. 176, 91 Eng. Reprint 161 (1699). Other cases to be found include an early American case, *Lawson v. Buzines*, 3 Harr. (Del.) 416 (1842) (cited in *Newburn v. Durham*, 88

---

upon a complaint or information charging any criminal offense may be executed or served at any place within the jurisdiction of the state of Wyoming." W.S. 7–8–103(a).

**5.** We note that the municipal bench warrant issued for appellant is addressed to the munici-

pal police, and to "any peace officer in the State of Wyoming." The issue is not presented for statutory interpretation to determine whether a deputy sheriff or other "peace officer" while acting within established jurisdiction could have lawfully made this arrest. *See People v. Rowe*, 95 Mich.App. 204, 289 N.W.2d 915 (1980).

Tex. 288, 31 S.W. 195 (1895)), where the rule is stated. *Newburn* does recognize a statutory extension of arrest authority for prevention and suppression. *See likewise City of Fairborn v. Munkus,* 28 Ohio St.2d 207, 277 N.E.2d 227 (1971), which, after citing the common law rule, recognizes a statutory extension of expanded jurisdiction. Following or recognizing the common law rule, see *Zanks v. Fluckiger,* 22 Conn.Sup. 311, 171 A.2d 86 (1961); *State v. Carson,* 374 So.2d 621 (Fla.App.1979); *Drake v. Keeling,* 230 Iowa 1038, 299 N.W. 919 (1941); *State ex rel. Malone v. Dreiling,* 136 Kan. 78, 12 P.2d 735 (1932); *State v. Harnum,* 143 Me. 133, 56 A.2d 449 (1947); and *Irwin v. State, Department of Motor Vehicles,* 10 Wash.App. 369, 517 P.2d 619 (1974). Wyoming has no statute nor has this court provided a rule which serves to abrogate the common law rule of confined territorial jurisdiction for municipal peace officers.

In summary, we hold that, under the circumstances presented by this case, the municipal peace officers had no authority to execute the municipal arrest warrant outside the boundaries of the municipality by which they were employed.

Appellant's conviction for interference with a municipal peace officer is reversed.

THOMAS, Justice, dissenting.

I, too, must dissent from the opinion of the court in this case. I agree with, and join in, the dissenting opinion of Justice Golden. I find, however, that the majority opinion is more straitened than plenary, as claimed, and I am constrained to suggest some additional reasons that justify this court in affirming the trial court. The Moorcroft police officers had other adequate cause to arrest Van Horn, without relying upon or invoking the municipal bench warrant, and that fact serves to justify his prosecution under § 6–5–204(a), W.S.1977.

There is no question raised in this instance that the arrest of the driver of the vehicle that Van Horn owned, and in which he was riding, was not lawful. Section 31–5–1204(a), W.S.1977 (June 1989 Repl.), provides, in pertinent part:

"(a) The authority of a police officer to make an arrest is the same as upon an arrest for a felony when the officer has reasonable and probable grounds to believe that the person arrested has committed any of the following offenses and the manner of making arrests shall be as in misdemeanor cases:

\* \* \* \* \* \*

"(ii) Driving or being in actual physical control of a vehicle while under the influence of alcohol or any substance as prohibited by W.S. 31–5–233; \* \* \*."

Section 7–2–103, W.S.1977 (June 1987 Repl.), sets forth the authority to arrest without a warrant and provides:

"(a) A peace officer may arrest a person without a warrant and detain that person until a legal warrant can be obtained when:

"(i) Any criminal offense is being committed in his presence by the person to be arrested;

"(ii) He has probable cause to believe that a felony has been committed and that the person to be arrested has committed it; \* \* \*."

The definition of "peace officer" in § 7–2–101(a)(iv), W.S.1977, includes "any duly authorized member of a municipal police force."

With this authority to arrest established, § 31–5–1202, W.S.1977 (June 1989 Repl.), becomes significant:

"Every person who commits, attempts to commit, conspires to commit, or aids or abets in the commission of, any act declared herein to be a crime, whether individually or in connection with one (1) or more other persons or as a principal, agent or accessory, is guilty of the offense, and every person who falsely, fraudulently, forcibly or willfully induces, causes, coerces, requires, permits or directs another to violate any provision of this act is likewise guilty of the offense."

There was ample probable cause in this instance for the Moorcroft police officers to arrest Van Horn for aiding and abetting

the driver in committing the offense of driving while under the influence of alcohol without relying on the bench warrant in any way.

The essence of the majority opinion is that, when an arrest is lawfully made by a peace officer, he still must subject himself to the hazard of resistance or interference if he makes mention of an arrest warrant that he may not have authority to execute at that place. This is not sound public policy and is antithetical to the policy justification for *Roberts v. State*, 711 P.2d 1131 (Wyo.1985). Neither is it sound or logical jurisprudence. Obstruction, impedance, interference, or resistance of arrest by a peace officer who is engaged in the lawful performance of his duties can hardly ever be justified and, as *Roberts* correctly suggests, only in the most compelling circumstances. That exception is not satisfied in this case.

One of our rules of appellate jurisprudence is that we can, and will, affirm the trial ·court on any legal ground appearing in the record. *Chapman v. State*, 638 P.2d 1280 (Wyo.1982); *Jones v. State*, 602 P.2d 378 (Wyo.1979). I am in accord with Justice Golden's thesis that the controlling authority for this case is *Roberts*. The application of *Roberts* depends upon whether there was a lawful arrest, and it should not be read in a stilted fashion so as to limit its scope to only those situations in which a warrant is relied upon. It follows that if, as in this case, there is a lawful arrest, the prosecution of the arrested person, or anyone else, for a violation of § 6–5–204(a), W.S.1977, should not be denied. The fact that the arresting officers also presented a municipal warrant does not justify the conduct of Van Horn in interfering with a police officer.

For the foregoing reasons, and for the reasons articulated by Justice Golden in his dissenting opinion, I would affirm Van Horn's conviction.

GOLDEN, Justice, dissenting.

Respectfully, I must dissent. I have several concerns that cause me to have a view different from that of the majority. In the interests of time and space, I only sketch briefly what troubles me about the court's holding.

Having carefully read the trial transcript, I find that officer Hagemann of the Moorcroft Police Department had, when arresting appellant, a good faith belief that he was inside the town's territorial limits. On his first day on the job, several years before the incident in question, the chief of police and the town clerk had told him that the town's limits included "right to the edge of the tennis courts" which, as shown on trial exhibit 1, a copy of a plat of the town, is well beyond the place where the arrest was made. As marked by officer Hagemann on that trial exhibit, the point of arrest was within the town's limits as understood by the officer when he arrested appellant. The trial transcript reveals that appellant presented no evidence to contradict officer Hagemann's good faith belief. In *Roberts v. State*, 711 P.2d 1131 (Wyo. 1985), this court held that an arrestee cannot lawfully resist an arrest based on an invalid warrant which the arresting officer in good faith believes is valid. The reason driving the rule is to prevent dangerous confrontations between an arrestee and the arresting officer. We promote the public policy that an arrestee must not take the law into his own hands, but must take the peaceful route of judicial remedy.

I find no significant difference in principle between *Roberts* and this case. I would hold that an arrestee cannot lawfully resist an arrest based on a valid warrant being executed by an officer who in good faith believes he is executing it within the territorial limits of his jurisdiction. The reason driving this rule is identical to the rule driving *Roberts*. The public policy we promote is the same.

That the Moorcroft police officers were engaged in the lawful performance of their official duties at all times surrounding the incident is beyond question. Without challenge, the evidence at trial established that the officers identified appellant's truck being erratically operated within the town's limits. The officer driving the police car turned on the overhead lights signalling

the driver of appellant's truck to stop. This happened within the town's limits. Appellant's vehicle travelled about a quarter of a mile further before it stopped, partially blocking the two-lane road. The officers lawfully arrested the driver of appellant's truck for driving while under the influence. W.S. 31–5–1204(a)(ii) (June 1989 Repl.); and see *Coryell v. Town of Pinedale*, 745 P.2d 883, 885 (Wyo.1987).

After arresting the driver, the police learned that appellant, a passenger, was the registered owner of the truck. Under W.S. 31–5–1203 (June 1989 Repl.), it is unlawful for a motor vehicle owner, such as appellant, to knowingly permit an intoxicated person to drive his vehicle. In any event, the driver of appellant's vehicle told the police that he was more sober than his two passengers, appellant and appellant's brother. At this point it was apparent to the police that they needed to take charge of the situation because of the inebriated condition of the threesome and the fact that the truck was blocking the road. During the efforts of the police officers to reason with appellant, his brother peaceably got out of the truck; however, appellant refused to leave the truck and locked the doors. He frustrated the officers' attempts to unlock the doors as well. For twenty-five minutes the police and appellant's brother tried to persuade appellant to get out of the truck; he refused.

Under these facts, I am satisfied the jury was correct in finding that appellant interfered with the officers' lawful performance of official duties. I would affirm the conviction.